(67 South. 342)

No. 20853.

DREYFUS v. AMERICAN BONDING CO. et al.

(Nov. 4, 1914. On the Merits, Jan. 11, 1915. Rehearing Denied Feb. 8, 1915.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR ☞801 — MOTION TO DISMISS—DETERMINATION.

In determining whether an appeal should be dismissed, this court will not decide or consider an issue raised in the motion to dismiss the appeal, which properly belongs to the merits.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3161–3164; Dec. Dig. ☞ 801.]

On the Merits.

*(Additional Syllabus by Editorial Staff.)*

2. CONTRACTS ☞214—BUILDING CONTRACT—CONSTRUCTION—TIME OF PAYMENTS.

Under a building contract binding the contractor to construct eight cottages, "said work" to be done in conformity with the specifications, and to be commenced at once and continued uninterruptedly to completion, and providing, "in reference to each cottage," that one-fifth of the price should be paid when the "building" was framed, one-fifth when it was inclosed, one-fifth when the second coat of plastering was on, one-fifth when the "building" was completed and accepted, and the balance 15 days after completion and acceptance of the "work," such balance was payable 15 days after the completion and acceptance of each building, and the owner was not required to retain it until completion and acceptance of all the buildings.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 980–995; Dec. Dig. ☞214.]

3. MECHANICS' LIENS ☞238—MECHANICS' PRIVILEGES—COMPLETION OF BUILDING—NOTICE—ERROR IN DATE—CONCLUSIVENESS.

That a notice of completion of a building registered by an owner erroneously fixed the date at a date later than the true date did not render premature certain payments made by him less than 45 days after such erroneous date, where they were not made until after the 45 days given materialmen by Act No. 167 of 1912, within which to record their liens.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 420; Dec. Dig. ☞238.]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Jules S. Dreyfus against the American Bonding Company and others. From a judgment for plaintiff, the defendant named appeals. Affirmed.

Solomon Wolf, of New Orleans, for appellant. A. D. Danziger, of New Orleans, for appellee Dreyfus. Fred C. Marx, for appellee Louisiana Cypress Lumber Co., Limited. Dart, Kernan & Dart, of New Orleans, for appellee J. J. Clarke Co.

On Motion to Dismiss the Appeal.

O'NIELL, J. [1] This is a concursus proceeding in which the surety on the bond of the contractor has appealed from a judgment approving the report of the commissioner. The materialmen have moved to dismiss the appeal on the ground that the appellant's exceptions taken to the report do not refer to the findings in favor of the materialmen. If they had taken this view of the exceptions in the district court, they should have moved for a confirmation of the findings in their favor, when the delays for filing exceptions expired. On the contrary, the exceptions were regarded as objections to the findings in favor of the materialmen, as well as the owner of the buildings, and the judgment of confirmation was rendered after a hearing thereon. We will not pass upon the various exceptions to determine a question which may properly be considered on the

merits. The motion to dismiss the appeal is therefore denied.

### On the Merits.

PROVOSTY, J. Eight cottages having been erected for plaintiff by a contractor, and the unpaid materialmen having recorded their liens, and the contractor having gone into bankruptcy, plaintiff deposited in court the balance due by him to the contractor for the last payment on the last three cottages that were completed, and ruled into court the contractor, the materialmen, and the defendant bonding company, surety on the bond given by the contractor for the faithful performance of the contract and the payment of the materialmen, to litigate inter sese their rights and claims, and prayed for judgment ordering the cancellation of the liens.

The materialmen answered, asking that plaintiff, the contractor, and the bonding company be condemned in solido to pay them the amount of their claims, and that their liens be recognized and enforced on the buildings. The bonding company answered that plaintiff had made certain payments to the contractor prematurely, and should be condemned to account for the amounts thus prematurely paid.

Judgment was rendered ordering the liens canceled, and condemning the defendant bonding company and the trustee in bankruptcy of the contractor in solido to pay to the materialmen the full amount of their claims. The appeal has been taken by the defendant bonding company alone, and the sole question is as to whether plaintiff made any payments prematurely.

Plaintiff interpreted the contract as requiring him to make payments for each of the cottages separately, whereas the bonding company contends that the eight cottages together constituted one single work, and that the last payment was not due until all eight cottages, or, in other words, the entire work, had been completed; and that, at all events, even if the last payment was due on the cottages separately, plaintiff made it prematurely on three of them.

[2] The contract, leaving out all parts that have no bearing upon the controversy, is as follows:

"The contractor binds himself to construct eight cottages for the plaintiff; said work to be done in conformity with the specifications. He binds himself to begin said work at once, and to continue it uninterruptedly, so as to deliver the same complete on or before * * * under penalty * * * for each day said work shall remain uncompleted, provided that in case said builder be hindered in the construction of said building * * * before the work is completed. * * * The said builder binds himself to remove from the grounds or building all materials condemned by the architect. * * * He shall use due diligence to protect the work from injury. * * * He shall permit the owner to inspect said work or any part thereof. * * * In consideration of the premises, the said owner binds himself to pay to the said party of the second part for the satisfactory execution and completion of said work at the rate of twelve hundred and eighty-seven $50/100$ dollars for each cottage complete, which will be settled in the manner following, to wit: In reference to each cottage:

"(1) One-fifth when the building is framed.
"(2) One-fifth when the building is inclosed.
"(3) One-fifth when the second coat of plastering is on.
"(4) One-fifth when the building is completed and accepted.
"(5) One-fifth, being the balance, fifteen days after completion and acceptance of the work, and on production of a certificate from the recorder of mortgages in this city showing that no liens or privileges have been recorded against said building."

Upon the question of whether the fifth payment was due upon each cottage separately as completed and accepted, or only when all eight cottages had been completed and accepted, the learned counsel for the bonding company argues as follows:

"I call the attention of the court to the opening paragraph. The price to be paid is at the rate of $1,287.50 for each cottage on the satisfactory completion and acceptance of 'the work.' Clearly the word 'work' is used as meaning all the work which is to be done under the contract, namely, the erection of all the buildings.

"The contract then continues that the first four payments on each building are to be made as the building progresses, while the last and

fifth payment is to be made 'fifteen days after the completion and acceptance of the work.'

"I submit that the provision referring to the payments establishes the indivisibility of the contract. The contracting parties carefully distinguish between each building specified in the contract and 'the work' as a whole. So it is provided in the contract, after describing where the eight cottages shall be built:

" 'Said work' shall be done in strict conformity with the plans and specifications.

"The party of the second part binds himself to begin 'said work'; i. e., of erecting the eight cottages. The penalty established for not completing is for 'the work.' The extension of time which may be granted speaks of 'the work,' and all through the contract the parties speak of 'the work' when they intend to cover all that was to be done under the contract. Thus there was only one set of plans and one set of specifications.

"Only in the provisions relating to the first four payments which are to be made on each one of the cottages is anything said of each 'building' separately.

"We have it, therefore, that not only do the words 'the work' ordinarily include everything that was to be done under the contract, but, more, the parties themselves have established the distinction and consistently speak of 'the work' when they mean everything to be done under the contract, and of the 'building' (in the singular) when they speak of each cottage separately.

"Let us now turn back to the provision about the fifth and last payment, and we will find that it was to be made 'fifteen days after the work was completed and accepted.'

"Not 15 days after each building is completed and accepted, as provided for the fourth payment, but 15 days after 'the work' is completed and accepted.

"When was the work completed and accepted? Certainly 'the work' was not completed and accepted as each cottage was completed and accepted. 'The work' was completed and accepted when the last of the cottages was completed and accepted, and not before. Any single cottage may have been completed and accepted, but *the work* was not completed and accepted until the last cottage was completed and accepted.

"I now call the attention of the court to this: That every one who furnished material or labor, and who recorded his lien, as well as their respective attorneys, have treated the contract as a single, entire, indivisible one.

"The answers of the materialmen are all in the record, and in each one it is alleged that the material or labor was furnished for the erection, not of any one of the buildings, but for all of them—for the work—and each one claimed a lien, not on any one of the buildings, but on all —on the work.

"The evidence supports these allegations. No furnisher of supplies can or does say that the material furnished by him went into one or the other house. It is entirely probable that the material furnished by one man went into one building, while like material furnished by another man went into another building.

"Under the pleadings and the evidence, the liens rest on all the buildings—on the work—or they do not exist at all.

"The commissioner (the case was referred by the trial court to a commissioner under Act 52, p. 61, of 1912, for a finding on the law and the facts, and the report of the commissioner was adopted by this trial court as the basis of its judgment) saw the difficulty and gave each furnisher of material a lien on all the buildings— on the work.

"I submit that in doing this the commissioner and the court a qua recognized and maintained the indivisibility of the work, for, if they had not, no lien would exist on all the buildings— on the work.

"Suppose I made eight contracts, each for the erection of a single house. The man who furnished material, and could not say for which one he furnished it, would have no lien at all. The court could not give him a lien on all the houses when he furnished it for only one.

"The contractor in purchasing, the materialman in selling, it, all treated the contract as entire and indivisible, and the owner so treated it, because the moment a lien was filed he stopped payment, without inquiring whether the material had been used on the houses for which he had already paid, or whether it was used on the houses not yet fully paid for, and on which he still owed the last payment.

"The commissioner also treated the contract as entire and indivisible by recognizing the lien on the work.

"If, however, the contract was indivisible as to the materialmen, why was it not so as to the surety?

"It could not be one thing to the materialmen and another thing to the surety, particularly as the latter had assumed a single obligation for one-half of the entire contract.

"The bond of the surety is not for one-half of the price of each building; it is for one-half of the entire amount of the work."

We are not convinced by this argument. The interpretation put upon the contract by the contractor and the materialmen can be binding only upon them, not upon the plaintiff. Moreover, it is doubtful whether these materialmen ever took the trouble to read the contract, well knowing as they did that, if a contract and bond for their protection had not been recorded, they could have recourse against the owner and his buildings, while the contractor had no interest in safeguarding the privilege of the materialmen, and therefore, doubtless, never gave the matter a

thought, but simply distributed the materials among the several cottages as best suited his convenience, whereas the plaintiff and the contractor, who put upon the contract the interpretation that it was separate for each cottage, did so with full knowledge and after due consideration of the terms of the contract necessarily, since they could not otherwise have known how the payments were to be made. So far as the attorneys who filed the answers of the materialmen are concerned, the fact that, in claiming a privilege for their clients, they adopted an interpretation by which their clients should have a privilege, rather than one by which they should have none, is not to be wondered at, and is therefore insignificant. The commissioner did not allow the privilege, but, on the contrary, ordered the inscription of it to be canceled.

Besides, this contemporaneous interpretation could only be persuasive. It would not be conclusive. The terms of the contract would still have to be consulted; and we think they clearly indicate, if they do not actually express, an intention that the payments should be made for each building separately. Unmistakably, as the learned counsel of the bonding company has to admit, and does admit, four out of the five payments were to be made on each building separately; and the pertinent inquiry presents itself: What possible reason would the parties have had for a different agreement as to the fifth payment? Again, why fix a price upon the cottages separately, if payment was not to be made for each as it was completed and accepted. The language of the contract is that the owner is to pay to the contractor $1,287.50 "for each cottage complete, which will be settled in the manner following, to wit, in reference to each cottage." Then follows the specification of the manner in which the five payments are to be made, with absolutely nothing to indicate that the phrase "in reference to each cottage" does not qualify

just as much the manner of the fifth payment as that of the other four. So that the reading is that all five of the payments are to be made "in reference to each cottage," and not, as contended by the bonding company, four of them in that manner and the fifth in a different manner, namely, not "in reference to each cottage," but in reference to the entire work called for by the contract. That the word "work" made use of in the phrase "after completion and acceptance of the work" has reference to the work upon each cottage separately is made manifest by what follows in the sentence, to wit, that the payment is to be made upon "the production of a certificate showing that no liens have been recorded against said building." "Said building" can only mean the separate building that has been completed and accepted and upon which the fifth payment is to be made. It cannot possibly mean the eight buildings.

[3] On the question of whether plaintiff did not make the last payment prematurely upon three of the cottages, even conceding that the payments were due upon each cottage separately as completed and accepted, we deem it unnecessary to go into details.

Under the provisions of Act 167, p. 302, of 1912, materialmen have, for recording their liens against the building, a delay of 45 days from the date of the registry by the owner in the office of the recorder of mortgages of a notice of the completion of the building. In the notice thus registered by the plaintiff a mistake in the date was made by which the date of the completion of the building was erroneously fixed at a later date than the conclusive proof shows was the case. With reference to this erroneous date the alleged premature payments in question were made too soon, but with reference to the true date, as shown by the evidence, they were made only after due, and the whole contention is based upon the supposed conclusiveness of this error upon the plaintiff. The whole and sole purpose of the registration of this notice

is that it may serve as a starting point for the delay of 45 days within which the liens must be filed. So long as that purpose is not sought to be defeated, there is absolutely no reason why the owner should be held to be concluded by any errors that may have crept into said notice.

Judgment affirmed.