(103 So. 241)

No. 24533.

## DREWES & CO. v. HAM & SEYMOUR.

(July 5, 1921. On the Merits Feb. 2, 1925. Rehearing Denied March 2, 1925.)

*(Syllabus by the Court.)*

On Motion to Dismiss Appeal.

1. **Appeal and error** ⊚⟾801(4)—**Justiciable question properly brought up will not be considered as ground for motion to dismiss appeal.**

A justiciable question properly brought up by appeal will not be considered as a ground for a motion to dismiss the appeal.

On the Merits.

*(Additional Syllabus by Editorial Staff.)*

2. **Courts** ⊚⟾489(11)—**State court can issue preliminary and ancillary injunction to restrain national bank from paying draft.**

State court can issue preliminary injunction against national bank to restrain it from paying draft under letter of credit as ancillary to main demand against different defendant, Rev. St. U. S. § 5242 (Comp. St. U. S. § 9834), preventing injunction, etc., against national bank or its property before final judgment not applying.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Suit by Drewes & Co. against Ham & Seymour. From a judgment dissolving an injunction, plaintiffs appeal. Reversed, motion to dissolve injunction overruled, and case remanded.

Denegre, Leovy & Chaffe and Charles Rosen, all of New Orleans, for appellants.

Donelson Caffery and St. Clair Adams, both of New Orleans, for appellee.

On Motion to Dismiss Appeal.

MONROE, C. J. Plaintiffs having obtained an injunction against defendants and the Whitney National Bank, prohibiting and restraining defendants from demanding or attempting to enforce payment of a certain draft for $100,800, drawn under a letter of credit issued by the bank, and prohibiting and restraining the bank from paying the same out of petitioners' funds and charging the payment to their account, the injunction, on defendants' motion, was set aside by the trial judge, in so far as it was directed against the bank, and this appeal was allowed from that ruling. Defendants now move to dismiss the appeal on the ground that it has the effect of maintaining the injunction, the issuance of which, they allege, was beyond the authority of any court as being in violation of section 5242 of the Revised Statutes of the United States (Comp. St. § 9834).

The motion is identical in terms with that filed in the case of Barkley & Co. v. Ham & Seymour, No. 24534, 103 So. 245,[1] of the docket of this court, arising out of transactions similar to those here disclosed; and the motion in that case was denied, for reasons which are entirely applicable to and are adopted for the purposes of the motion now under consideration.

[1] It is not here asserted that the dissolution of the injunction may not work the plaintiffs an irreparable injury, and the

---

[1] Post p. 872.

question whether it was competent for the trial court to issue the writ is a justiciable one which that court was bound to decide, and which is reviewable in this court on the appeal, but not on the motion to dismiss the appeal. State v. Marks, 30 La. Ann. 70, 71; Baker v. Frellson, 32 La. Ann. 822; Succession of Baumgarden, 35 La. Ann. 675, 676; Pasley v. McConnell, 39 La. Ann. 1097, 3 So. 484, 485; Brewing Co. v. Boebinger, 40 La. Ann. 277, 4 So. 82; Dreyfus v. Am. Bonding Co., 136 La. 491, 67 So. 342; Board v. Meridith, 140 La. 269, 275, 72 So. 960; Citizens' Bank, etc., v. Bellamy Lumber Co., 140 La. 497, 501, 73 So. 308.

For the reasons thus assigned therefore, and for those assigned in Barkley & Co. v. Ham & Seymour, supra, the motion to dismiss is denied.

### On the Merits.

THOMPSON, J. [2] The question presented for decision on this appeal is whether a state court has jurisdiction and authority to issue a preliminary and purely ancillary injunction against the Whitney Central National Bank, restraining the said bank from paying a draft and charging the same to the plaintiff, the draft being drawn by the defendant Ham & Seymour on said bank by virtue of a letter of credit issued by the bank to Ham & Seymour for account of the plaintiff—the said court having jurisdiction both ratione materiæ and ratione personæ, and the main demand and controversy being between plaintiff and defendant, and in which the bank has no interest further than to pay out the fund in accordance with its obligation under the letter of credit.

The Whitney Bank made no appearance in the case, but the defendant Ham & Seymour moved to dissolve the injunction on the face of the petition, on the ground that a state court had no jurisdiction to issue an injunction against a national bank.

The motion is based on the concluding clause of section 5242, U. S. Revised Statutes, which reads:

"* * * And no attachment, injunction, or execution shall be issued against such association or its property before final judgment in any suit, action, or proceeding in any state, county, or municipal court."

The district judge sustained the motion and dissolved the injunction as to both defendants.

It appears from the allegations of the petition that in April, 1920, Ham & Seymour agreed to sell and the plaintiff agreed to buy 1,000 tons of White Java sugar at the price of 22½ cents per pound. The sugar was to be shipped 200 tons during July and August, 550 tons during August and September, and 250 tons September and October, delivery to be made at New York City.

The terms were to be net cash on presentation of custom house permit and delivery order, based on net landed weights at New York.

It was provided in the contract that the plaintiff should arrange for the payment of the sugar as delivered by letter of credit in the sum of $504,000, which arrangement was made with the Whitney Bank.

The letter of credit provides that drafts must be drawn and bills of lading dated in New York, prior to December 15, 1920, and advice given to the said bank, accompanied by custom house permit and delivery order filled up to order of the said bank, with abstract of invoice indorsed thereon or a copy of invoice accompanying the said bill of lading.

The bank agreed with the drawers, indorsers, and bona fide holders of bills drawn in compliance with the terms of the credit, that the same would be duly honored on presentation at the office of said bank.

It was further provided in the letter of credit that:

"Payments shall be made in cash or by sight draft against presentation of custom house permit and, or warehouse receipts (duties paid) and delivery order."

The petition alleges that said Ham & Seymour claiming to act under the said letter of credit have drawn on the said bank for $100,800 for about 200 tons of sugar, which sugar is not regular or of the grade or quality or character described and contracted for, nor was same shipped during said specified months, nor shipped from Java, nor as required by the terms of said letter of credit and contract.

That the said draft was not drawn in compliance with the terms of either the contract or the letter of credit, and that the payment thereof out of the funds of petitioner or on petitioner's guarantee or credit is wholly unauthorized.

That the said Ham & Seymour have declined to permit either petitioner or the bank to see or to examine the shipping documents, or to inspect the sugar to see if said sugar is the sugar ordered or contracted for or covered by said letter of credit or contract.

It is alleged that for the reasons stated, and for other reasons set out in the petition, the said contract and the letter of credit have been violated, breached, and annulled by said Ham & Seymour, and said bank should not pay said draft drawn on it by said Ham & Seymour, nor should Ham & Seymour collect or attempt to collect said draft.

The prayer is for an injunction against the bank restraining said bank from paying said draft drawn upon it, out of the funds of petitioner, or charging the said draft to the account of petitioner, and restraining said Ham & Seymour from demanding or attempting to enforce payment of said draft.

It is further prayed that plaintiff have judgment declaring said contract between plaintiff and Ham & Seymour and the said letter of credit to be null and void and of no effect, and the terms thereof to have been breached and violated by said Ham & Seymour.

If from the facts stated the case can be deemed a case directly against the bank, and the object is to restrain the said bank from doing some act in the due course of its administration and the management of the business for which such bank was organized, or if the injunction was designed to stop or had the legal effect of preventing the bank from disposing of its property and assets, then it would seem to be too clear for argument that the injunction could not be issued by a state court.

This is the construction placed on the statute by the Supreme Court of the United States, and we are bound by such interpretation.

In the case of Pacific National Bank v. Mixter, 124 U. S. 721, 8 S. Ct. 718, 31 L. Ed. 567, the United States Supreme Court said:

"In our opinion the effect of the Act of Congress is to deny the state remedy altogether so far as suits against national banks are concerned, and in this way it operates as well on the courts of the United States as on those of the states."

In the same case it was said that the same power is also taken away from the state court to issue injunctions.

In that case, however, the suit was directly against the national bank to recover an alleged indebtedness due by the bank to the plaintiff Mixter, and the attachment was directed against the funds of the bank on deposit to its credit in another national bank.

In the case of Van Reed v. People's National Bank, 198 U. S. 554, 25 S. Ct. 775, 49 L. Ed. 1161, 3 Ann. Cas. 1154, the Mixter Case was affirmed, and the court said:

"The language of the latter clause of this section [5242] would seem to be too plain to admit of discussion as to its meaning. It in terms forbids the issuing of an attachment, injunction or execution against a national bank or its property before final judgment in any suit, action or proceeding in any state, county or municipal court."

In the Van Reed Case, as in the Mixter Case, the action was directly against the bank, and the attachment was directed at the seizure of the assets and property of the bank before final judgment was rendered against the bank.

And this appears to be true in all the cases in which the question has been considered by the state courts.

In First National Bank v. La Due, 39 Minn. 415, 40 N. W. 367, decided by the Supreme Court of Minnesota, a suit was instituted by the plaintiff bank to restrain defendant from prosecuting an action against the plaintiff bank in New York, in which a writ of attachment had been issued and levied upon the bank's property. The court held that the attachment in the New York court by which the bank's money had been seized was illegal and void, because the writ was issued without authority, in view of the federal statute prohibiting attachments against a national bank by a state court.

The case of Rosenheim Real Estate Co. v. Southern National Bank (Tenn. Ch. App.) 46 S. W. 1026, was a suit against the bank for the wrongful conversion of bonds which had been left with the bank by the plaintiff for safe-keeping and which bonds the bank refused to deliver up on demand.

An attachment was issued against the bank, and was levied upon certain debts due the bank by the other defendants, in order to subject their indebtedness to the bank to the payment of the recovery sought against the bank.

An injunction was also issued enjoining the debtors of the bank from paying the bank any debt they owed it.

The court, following the Mixter Case, held that no attachment, nor an injunction, could issue against a national bank.

Safford v. First National Bank, 61 Vt. 373, 17 A. 748, was a suit against the bank, and an attachment was issued against the bank and service was made on a trustee of the bank.

The court held that the service of the writ on the trustee, thus preventing the defendant bank from receiving whatever might be in the hands of the trustee, was in legal effect attaching the bank's property, and, treating the service made as an attachment of the bank's property, the attachment was illegal and void.

Freeman Mfg. Co. v. National Bank of Boston, 160 Mass. 398, 35 N. E. 865, was an injunction against the bank, prohibiting the said bank from disposing of certain notes pledged to it without right or authority by one Brooks and one Bullers, assignees of the Potter Lovell Co.

The court held that Revised Statutes of the United States, 5242, forbidding state courts to grant preliminary injunctions against national banks, is meant not only merely to preserve to such banks control of their general assets, but applies to an order restraining the transfer or enforcement of notes as wrongfully pledged to a bank with notice.

Planters' Loan & Savings Bank v. Berry, 91 Ga. 264, 18 S. E. 137, was a suit against the bank. An attachment was issued and levied on the property of the bank by garnishment upon one of the debtors of the bank. The court held that this was a seizure of the debt, and the debt was the property of the bank, and that such seizure was utterly void.

It is a noteworthy and significant fact, that in all the cases from which we have quoted the suit and main demand was against the bank as the debtor or obligor, and the mesne process was directed against

and affected the general assets and property of the bank.

We have been referred to no case by the learned counsel on either side of this controversy, and an independent examination on our part has not enabled us to find a single case holding that the prohibition contained in section 5242, U. S. Revised Statutes, was applicable where an attachment was sought to reach and to subject to the creditor's demand property, not of the bank, but which was on deposit or in the possession of the bank for account of and belonging to the defendant in the suit.

We are therefore induced to conclude that no case can be found to the effect that an antiseizure cannot be made under process of a state court, or that a preliminary injunction cannot be issued where the effect is to reach or to control property held by the bank, or that is in possession of the bank for the special and peculiar benefit of another party.

In the case of Earle, Receiver of the Chestnut Street Bank v. Pennsylvania, 178 U. S. 454, 20 S. Ct. 915, 44 L. Ed. 1147, the commonwealth of Pennsylvania, for the use of the Commonwealth Title, Insurance & Trust Company, obtained a judgment upon a bond against one James Long. A suit of attachment issued upon that judgment, and an alias writ was issued against the Chestnut Street National Bank as garnishee. The writ commanded the bank to show cause, on a day named, why the judgment against Long should not be levied on the effects of the defendant in the hands of the bank. The receiver of the bank moved to vacate and dismiss the attachment served on the bank, garnishee, for want of jurisdiction in the court of common pleas, under section 5242 of the U. S. Revised Statutes. The receiver contended that all proceedings in attachment against the bank were null and void.

The rule to vacate the attachment was denied. The court, in the course of its opinion, said:

"Whatever may be the scope of section 5242, an attachment sued out against the bank as garnishee is not an attachment against the bank or its property, nor a suit against it, within the meaning of that section.

"It is an attachment to reach the property or interests held by the bank for others."

In the Van Reed Case, supra, the court considered the Earle Case, from which the above quotation is taken, and affirmed the holding therein—that is to say the court stated:

"We find nothing in the case of Earle v. Pennsylvania, 178 U. S. 449, which qualifies the decision announced in the Mixter Case."

The case at bar in our opinion is strikingly distinguishable from the cases which we have referred to as denying the right of a state court to issue an attachment or injunction against a national bank, and comes, we think, within the rule of the Earle Case.

It is not a case against the Whitney Central National Bank as a debtor of the plaintiff, and the purpose of the injunction is not to affect the general assets and property of said bank, nor to tie up the general assets and property of said bank within the contemplation and meaning of the prohibitive statute.

The main object of the suit is to annul the contract between the plaintiff and Ham & Seymour in which the bank has no direct or pecuniary interest and with which the bank has no concern. And the purpose of the injunction is merely to maintain the status quo of the fund in the bank until the controversy between the contestants is finally determined.

The fact must not be overlooked that the credit extended by the bank to the plaintiff under the letter of credit was not subject to be drawn against for all purposes. Nor

could the bank under its letter of credit pay any draft and charge the same to the plaintiff, except under the terms of, and in accordance with, the letter of credit. The fund could not therefore be said to be an asset of the bank or property of the bank.

If, as held in the Earle Case and approved in the Reed Case, a garnishment under attachment may run against a national bank to reach the property or interests held by the bank for others, there is no sufficient reason, it would seem, for holding that an injunction may not likewise issue against the bank to stay the fund held by said bank for the benefit of others, and particularly where such fund forms no part of the general assets of the banks and is to be applied, if disbursed at all, in accordance with the terms of the contract and letter of credit, the validity and binding effect of which is at issue in the case in which the injunction is sought.

There can be no difference in legal effect between a garnishment against the bank under an attachment which seeks to apply the deposit in the bank to the creditor's claim against the depositor, and an injunction, the only purpose of which is to stay the payment of a draft out of a specified fund, and which fund can only be paid out by the bank under certain designated conditions, these conditions forming the basis of the action in which such injunction is asked.

Our conclusion is that the words "before final judgment in any suit," mean a final judgment against the bank in an action against the bank, and have no reference to attachment and injunction issued "before final judgment" in suits and actions between other parties which do not seek to affect the general assets and property of the bank.

We are of the opinion that the injunction was improperly dissolved.

The judgment is reversed, the motion to dissolve is overruled, and the case is remanded to the district court to be proceeded with according to law. The costs of appeal to be paid by appellee.

ROGERS, J., takes no part.