[Civ. No. 49909. Second Dist., Div. One. Apr. 1, 1977.]

CROCKER NATIONAL BANK, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THOMAS J. PALMER, INC., et al., Real Parties in Interest.

864

**COUNSEL**

Morrison & Foerster, Girvan Peck, Darrell L. Sackl and Ronald F. Brot for Petitioner.

No appearance for Respondent.

Baum & Cohen, Arthur Jarvis Cohen and Leonard P. Baum for Real Parties in Interest.

**OPINION**

**HANSON, J.—**

INTRODUCTION

Petitioner Crocker National Bank (hereinafter Crocker) is a defendant in a civil action filed in the superior court (Los Angeles Superior Court No. SOC 44418) in which the plaintiffs (Thomas J. Palmer, Inc., Lake Construction Co., Inc., Kenneth G. Walker, and Thomas J. Palmer) are the real parties in interest herein.

The underlying complaint (No. SOC 44418) of the real parties in interest sounding in breach of contract and fraud prays for money damages against all defendants except Crocker. As to defendant Crocker, it prays for a temporary restraining order, preliminary injunction and permanent injunction forever enjoining defendant Crocker from borrowing or otherwise disbursing sums of money under the terms and provisions of a certain $522,000 letter of credit.

The superior court granted the preliminary injunction and petitioner Crocker seeks a writ of prohibition directing that court to vacate its order granting the injunctions.[1]

[1]This court previously denied Crocker's petition for writ of prohibition upon the ground that there was a remedy by appeal. However, the California Supreme Court

## THE CASE

The facts and positions of the parties can reasonably be gleaned from the record as set out below.

The underlying verified complaint (No. SOC 44418) filed by plaintiffs (real parties in interest) which was considered by the court below alleges that Natisco, a joint venture comprised of two Alabama corporations, entered into a contract to sell coal (hereinafter Coal Sales Contract) to defendant Turkish Iron and Steel Works (hereinafter Turkish Steel), and that the Coal Sales Contract required that the buyer, Turkish Steel, provide the seller, Natisco, with a letter of credit for the payment of the coal and in addition, required that Natisco, as seller, guarantee its performance by way of a letter of bank guaranty.

The complaint further alleges that in a separate contract (hereinafter Financing Contract) plaintiffs agreed to furnish a letter of credit in the amount of $522,000 in order to satisfy Natisco's guaranty of performance obligation under the Coal Sales Contract; that in return, Natisco, the two Alabama corporations which formed Natisco, defendant Vulcan Energy Resources, a corporation, and defendant Charles S. Pettyjohn, an individual, agreed to furnish plaintiffs with a true copy of a $243,000 letter of credit allegedly previously secured as part of the seller's performance guaranty under the Coal Sales Contract; that in addition the same parties agreed, inter alia, to give plaintiffs security interests in certain coal, a pledge of stock in the two Alabama corporations which had formed Natisco, the right to certain dollar amounts per ton of coal sold under the Coal Sales Contract and the assignment of Turkish Steel's letter of credit; that the terms and provisions of the Coal Sales Contract were not to be altered, amended or changed without the prior written consent of one of the plaintiffs.

It is further alleged that on December 4, 1975, plaintiffs arranged to have Crocker issue an irrevocable letter of credit in the amount of $522,000 in favor of the beneficiary, defendant Turkiye Is Bankasi AS (hereinafter Turkish Bank); that the initial documentary requirement provided that the Turkish Bank furnish an authenticated cable stating that the amount drawn represents the amount it was required to pay under its guaranty of performance by Natisco for the delivery of coal in

granted a petition for hearing and transferred the cause to this court with the direction that an alternative writ of prohibition issue. Under the circumstances it is not necessary to discuss the propriety of relief by writ of prohibition. (*Atlantic Richfield Co.* v. *Superior Court* (1975) 51 Cal.App.3d 168, 170 [124 Cal.Rptr. 63].)

1976 to Turkish Steel under the Coal Sales Contract and providing that the expiration date was December 31, 1976; that on December 5, 1975, that documentary requirement was cancelled in its entirety and a substituted documentary requirement provided for a signed statement by the Turkish Bank stating that the amount drawn represents the amount it was obligated to pay under its guarantee validity (unlimited in time) to Turkish Steel for the sum of up to $522,000 covering performance under the Coal Sales Contract (identified by reference numbers, date and parties) for the account of Natisco pertaining to shipments of 450,000 tons of coal to be delivered in 1976 according to the delivery schedule in the Coal Sales Contract; that the substituted provisions also stated that the letter of credit would be automatically extendable for further periods of six months until the Turkish Bank's guaranty was returned to it.

The complaint additionally alleged that in March 1976 the Coal Sales Contract was amended in writing by Turkish Steel and Natisco without plaintiffs' consent which had the effect of altering and diminishing plaintiffs' rights under the Financing Contract and making plaintiffs' letter of credit a guaranty and performance bond as to the amended Coal Sales Contract.

The complaint further sets forth that after the parties (other than plaintiffs) failed to fulfill their obligations under the Financing Contract, on April 13, 1976, plaintiffs foreclosed upon the pledge of stock and thereby became the owner of all of the stock in one of the Alabama corporations and 98 percent of the stock in the other; that plaintiffs brought an action in Alabama against defendant Pettyjohn and others (who are not named defendants in the California action); that the Alabama court found that the defendants in the Alabama proceedings had made shipments of coal under the Coal Sales Contract after April 13, 1976, without authority to make such shipments on behalf of Natisco which plaintiffs then owned by reason of the foreclosure of stock; that the Alabama court permanently restrained the Alabama defendant from acting under the name of Natisco, from using the letters of credit emanating from the Coal Sales Contract, from making shipments of coal under the Coal Sales Contract with Turkish Steel, and from referring to the Coal Sales Contract by its reference numbers.

The complaint alleges that the defendants (excluding Crocker) have entered into a common plan or scheme to obtain and usurp the benefits of the Coal Sales Contract and plaintiffs' letter of credit; to prevent

Natisco from performing under, or obtaining the benefits of, the Coal Sales Contract; to represent that they were authorized to act on behalf of Natisco; and to create irreparable injury to plaintiffs including the loss of $522,000 if demand is made upon the Crocker letter of credit.

In its answer to the above described complaint Crocker denied (upon the basis of lack of information and belief) the substantive allegations in the complaint as to the alleged wrongful acts of the other defendants, expressly denied that it knew or should have known that plaintiffs were the owners of Natisco after April 13, 1976, and that none of the defendants were authorized to act for Natisco after that date, and denied that plaintiffs will suffer irreparable harm if Crocker is not restrained from enforcing the letter of credit. Crocker, however, admitted that upon proper demand by the Turkish Bank it would honor the plaintiffs' letter of credit.

In addition to submitting points and authorities in opposition to plaintiffs' (real parties in interest) application for a preliminary injunction, Crocker filed the declaration of Charles H. Hallock, vice president and manager of its Los Angeles international banking office. Mr. Hallock first stated that Crocker was a national banking association. He then summarized the transaction in point and the custom and usage of letters of credit in international banking. He particularly stressed the fact that banks, in dealing with a letter of credit, deal only with the documents and do not become involved in the underlying transaction. He further stated that international letters of credit are subject to a document entitled Uniform Customs and Practices and attached a copy to his declaration.

He further stated that no signed statements requiring payment upon the letter of credit had been received by Crocker as of November 10, 1976. He expressed his confidence that if Crocker failed or refused to honor the letter of credit the Turkish Bank would exercise a banker's offset against Crocker's deposits which deposits with the Turkish Bank total more than $522,000 and Crocker would also suffer damage to its international reputation if it failed to honor the letter of credit.

The record before this court contains only the supplemental points and authorities filed by the plaintiffs and does not contain the first set of points and authorities or a transcript of the hearing. Crocker states and plaintiffs do not dispute that the only evidence presented by plaintiffs to the superior court was the above described verified complaint.

## Discussion

The foregoing reflects that there are three distinct contracts involved.

*First,* there is the Coal Sales Contract which is an agreement between Natisco and Turkish Steel.

*Second,* there is the Financing Contract, hereinbefore described, between the plaintiffs and the defendants, other than Crocker, who were, or had some interest as, sellers under the Coal Sales Contract.

*Third,* there is Crocker's letter of credit, which is independent of the underlying contract. (See *S. L. Jones & Co. v. Bond* (1923) 191 Cal. 551, 555 [217 P. 725]; *Dynamics Corp. of Amer. v. Citizens & Southern Nat. Bank* (N.D.Ga. 1973) 356 F.Supp. 991, 995.)

Since the preliminary injunction enjoins Crocker's performance under that third contract, the nature of Crocker's letter of credit is of paramount importance.

 Crocker first contends that the trial court was without jurisdiction to issue a preliminary injunction against it, a national banking association, by virtue of a federal statute (12 U.S.C. § 91 [hereinafter Section 91]) which provides, in pertinent part, that "no attachment, injunction, or execution, shall be issued against such association or its property before final judgment in any . . . action . . . in any State . . . court."

Crocker points to *Kemple v. Security First Nat. Bank* (1967) 249 Cal.App.2d 719 [57 Cal.Rptr. 838], and *First Nat. Bank v. Superior Court* (1966) 240 Cal.App.2d 109 [49 Cal.Rptr. 358], in support of its position in this respect. The cases of *Kemple* and *First Nat. Bank* involved an attempt to restrain the foreclosure of trust deeds in which the national banking association was the named beneficiary and both held that California was without jurisdiction by reason of Section 91 to issue either a temporary restraining order or a preliminary injunction against a national banking association. In both *Kemple* and *First Nat. Bank* there was clearly an attempt to enjoin a national banking association's general assets.

Plaintiffs (real parties in interest) on the other hand point to *Drewes & Co. v. Ham & Seymour* (1925) 157 La. 861 [103 So. 241], which held that,

despite the provisions of United States Revised Statutes section 5242 (now Section 91), a state court has the authority to issue a preliminary injunction restraining a national banking association from paying a draft under a letter of credit in a case where the bank has no interest in the controversy between the parties other than its obligation to pay out funds in accordance with the letter of credit.[2] In reaching that holding *Drewes* reviewed *Pacific National Bank* v. *Mixter* (1888) 124 U.S. 721 [31 L.Ed. 567, 8 S.Ct. 718] (no state attachment of funds of bank on deposit to its credit in another national bank); *Van Reed* v. *People's National Bank* (1904) 198 U.S. 554 [49 L.Ed. 1161, 25 S.Ct. 775] (no state attachment of assets and property of bank); and *Earle* v. *Pennsylvania* (1900) 178 U.S. 449 [44 L.Ed. 1146, 20 S.Ct. 915] (state court could attach property held by bank for another) and found the case before it similar to the fact situation in *Earle*.

*Drewes* apparently relied upon cases dealing with attachments because in that case the bank had a special deposit to cover draws upon the letter of credit. Thus, the *Drewes* court concluded that since the special deposit was not subject to be drawn against for all purposes, the special deposit was not an asset or property of the bank and hence a preliminary injunction could issue.

The traditional documentary letter of credit, which was present in *Drewes, supra,* is a method to insure payment for the sale of tangible goods. The buyer of the goods engages a bank to issue a letter of credit in favor of the seller (beneficiary). The resulting letter of credit is a contract between the bank and the beneficiary in which the bank agrees to honor drafts drawn by the seller upon the presentation of specified documents (i.e., bills of lading) which represent title to the goods sold. (Verkuil, *Bank Solvency and Guaranty Letters of Credit* (1973) 25 Stan.L.Rev. 716, 718; White & Summers, Handbook of the Law under the Uniform Commercial Code (1972) pp. 601-606; *The Uniform Commercial Code* (1962) 37 State Bar J. 119, 171.)

In contrast here the customers, plaintiffs (real parties in interest), who were neither sellers nor buyers in the underlying coal sales transaction, engaged Crocker to issue a letter of credit in favor of the Turkish Bank who also was neither a seller nor a buyer. The Turkish Bank's connection was by reason of its "guarantee validity." The record is silent as to the terms and date of that "guarantee validity."

---

[2] A similar issue was raised but expressly not decided in *Intern. Leather, etc.* v. *Chase Manhattan Bank* (1974) 45 App.Div.2d 108 [356 N.Y.S.2d 314].

In short, apparently what is present in the instant case is a letter of credit of guarantee for a "guarantee validity" by the Turkish Bank of a third party seller's performance under a contract (the Coal Sales Contract). Upon presentation of the documentary requirement (the signed statement by the Turkish Bank in accordance with the provisions of the letter of credit), Crocker is to honor drafts from its own funds. However, unlike the situation in a traditional letter of credit, as hereinbefore described, Crocker will receive no documents of title and hence cannot have, under any circumstances, a security interest in the goods sold. In addition, the present letter of credit differs from the traditional one in that there will be no draw upon the letter of credit if the underlying transaction proceeds as planned while with a traditional letter of credit a draw upon the letter of credit is contemplated upon performance of the underlying transaction. (See Verkuil, *Bank Solvency and Guaranty Letters of Credit, supra,* 25 Stan.L.Rev. 716, 721-723; Note, *Guaranty Letters of Credit: Problems and Possibilities* (1974) 16 Ariz.L. Rev. 822, 827.) Nevertheless under the present letter of credit as well as under the traditional letter of credit, the issuer's liability to the beneficiary is a primary one and not that of a guarantor.[3] (*S. L. Jones & Co.* v. *Bond, supra,* 191 Cal. 551; Cal. U. Com. Code, § 5103, subd. (1)(a).)

Here Crocker has simply agreed to pay the Turkish Bank if a proper demand upon the letter of credit is made and Crocker will be required to engage its own credit to meet that contractual obligation. The fact that Crocker's position as to the present letter of credit may be somewhat less secure in that it will not have any security interest in the goods sold serves to accentuate the fact of its direct liability. Crocker's expectation of immediate reimbursement from plaintiffs (real parties in interest)

---

[3]Admittedly there is some question about the true nature of the letter of credit in the present case. The function of Crocker's letter of credit is similar to a performance bond. (Cf. Note, *Guaranty Letters of Credit: Problems and Possibilities, supra,* 16 Ariz.L.Rev. 822, 827-829.)

On the other hand, difficulty in precise classification is understandable in that the letter of credit has long been a flexible device utilized by the commercial community to meet its needs in a wide variety of situations. Neither the Uniform Commercial Code nor the California Commercial Code attempted to establish rigid rules for letters of credit. Rather the intent was merely to state fundamental principles and to provide a basic framework for future change. (Cf. official com. Wests' Ann. Cal. U. Com. Code (1977 ed.) § 5-102, p. 224; Williams, intro. com. to div. 5, Letters of Credit, West's Ann. Cal. U. Com. Code (1964 ed.) p. 678.)

As this court deals only with the narrow issue of whether California may issue a preliminary injunction against a national banking association, we need not decide if the parties' classification of the document as a letter of credit is, indeed, correct (cf. *Wichita Eagle & B. Pub. Co., Inc.* v. *Pacific Nat. Bk., San Fran.* (9th Cir. 1974) 493 F.2d 1285) for any other classification would only serve to reinforce our conclusion, *infra,* that the bank's property and assets are involved.

does not diminish its obligations under the letter of credit. (Cf. official com. to West's Ann. Cal. U. Com. Code (1977 ed.) § 5-117, p. 278.) Since there is no evidence in the record before this court which would support a finding that there is a special deposit as was the case in *Drewes, supra,* Crocker's primary liability under the letter of credit can only mean that its property is involved. Hence the facts of this case are more closely analogous to *Kemple, supra,* and *First Nat. Bank, supra,* than to *Drewes, supra.*

Moreover, Crocker faces the possibility that the Turkish Bank will exercise a banker's offset if it is not permitted to honor otherwise proper draws upon the letter of credit.

■ In addition, the obvious purpose of the prohibition in Section 91 against a state court's interference with the operation of a national banking association is to protect "them against suits or proceedings in state courts by which their efficiency would be impaired." (*Dennis* v. *First Nat. Bk. of Seattle* (1900) 127 Cal. 453, 455 [59 P. 777].) ■ Since Crocker's contractual obligations under its letter of credit require that it engage its own credit for the honor of the letter of credit and as Crocker may face loss of its assets in a foreign bank, the issuance of a preliminary injunction could impair the efficiency of a national banking association.

Accordingly, by reason of the foregoing, we conclude that under the circumstances of the instant case Section 91 forbids such action by a state court.

In view of our decision that as to Crocker, a national banking association, the superior court's issuance of a preliminary injunction was in violation of Section 91, we do not reach Crocker's other contentions including whether or not section 5114 of the California Uniform Commercial Code precludes the issuance of an injunction. Our decision, however, is limited to defendant Crocker only. (Cf. *Steinmeyer* v. *Warner Cons. Corp.* (1974) 42 Cal.App.3d 515 [116 Cal.Rptr. 57].)

## Disposition

Let a peremptory writ of prohibition issue directing that the superior court vacate and annul, as to defendant Crocker National Bank only, its order of November 15, 1976, granting plaintiffs' (real parties in interest) motion for a preliminary injunction in Los Angeles Superior Court case

No. SOC 44418 entitled Thomas J. Palmer, Inc., et al. v. Charles S. Pettyjohn, et al. and thereafter refrain from further proceedings to enforce said order as to defendant Crocker National Bank only.

Lillie, Acting P. J., and Thompson, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied May 26, 1977.