## EARLE *v.* PENNSYLVANIA.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 218. Argued April 11, 1900. — Decided May 14, 1900.

An attachment sued out against a bank as garnishee is not an attachment against the bank or its property, nor a suit against it within the meaning of section 5242 of the Revised Statutes.

When the Chestnut Street National Bank suspended and went into the hands of a receiver, the entire control and administration of its assets were committed to the receiver and the comptroller, subject, however, to any rights of priority previously acquired by the plaintiff through the proceedings in the suit against Long.

The state court had no authority to order execution in favor of the plaintiff of any dividends upon the money on deposit in the bank to Long's credit at the time the bank was served with the attachment, and direct the sale of the shares of stock originally held by the bank as collateral security.

THE case is stated in the opinion.

*Mr. John G. Johnson* and *Mr. Asa W. Waters* for plaintiff in error. *Mr. W. H. Addicks* was on *Mr. Waters'* brief.

*Mr. James C. Stillwell* for defendant in error in No. 219, which was argued with this case.

MR. JUSTICE HARLAN delivered the opinion of the court.

On the 29th day of September, 1897, the Commonwealth of Pennsylvania, at the suggestion and to the use of the Commonwealth Title, Insurance and Trust Company, trustee for Mary Rodgers, obtained judgment upon a bond in the Court of Common Pleas for the county of Philadelphia against one James Long for the sum of $31,499. A writ of attachment issued upon that judgment, and on the 5th day of October, 1897, an alias writ was issued against the Chestnut Street National Bank of Philadelphia, as garnishee. The writ was served on October 28, 1897, and commanded the bank to show cause in that court on a day named why the judgment against Long, with costs of writ, should not be levied on the effects of the defendant in the hands of the bank. Afterwards, on November 6, 1897, special interrogatories were filed by the plaintiff, and a rule was entered requiring the bank, as garnishee, to answer the same within a named time. Subsequently the bank filed its answer in the attachment proceedings, and November 24, 1897, it filed an answer to the special interrogatories; and, on December 15, 1897, a rule was entered by plaintiff for judgment against the bank, as garnishee, on its answers.

A few days later, on the 23d day of December, 1897, the bank suspended payment of its obligations, and by order of the Comptroller of the Currency of the United States closed its

doors to business; and January 29, 1898, the present plaintiff in error, Earle, was appointed by that officer as receiver of the bank and duly qualified as such.

Subsequently, May 5, 1898, Earle, as receiver, entered his appearance in the above action and filed a suggestion of record setting forth his appointment and qualification, and on the following day filed an affidavit stating his appointment as receiver. On the succeeding day a motion was made and filed (entered as a rule) by the receiver to vacate and dismiss the attachment served upon the bank, garnishee, for want of jurisdiction in the Court of Common Pleas under section 5242 of the Revised Statutes of the United States, the receiver insisting that all the proceedings in attachment against the bank were null and void.

The rule entered December 15, 1897, for judgment against the bank and the rule to vacate and dismiss the attachment for want of jurisdiction in the Court of Common Pleas were heard, and that court, on May 21, 1898, made absolute the rule for judgment and entered the following: " And now, to wit, May 21, 1898, upon the hearing of the attachment in the above case and the interrogatories of the plaintiff and the answer of the garnishee thereto, it is adjudged that the above-named garnishee has a deposit in money belonging to the above-named defendant of $2900, with interest from October 28, 1897; and also that the said garnishee has 77 shares of 'National Gas Trust stock' and 33 shares of the capital stock of the Eighth National Bank of Philadelphia belonging to the said defendant and pledged by him with the said garnishee for payment by him to it of the sum of $17,831, with interest thereon from April 22, 1897, and that the plaintiff have execution of any dividends on the said deposit of $2900, with interest, in common with the other creditors of said garnishee, less $35 counsel fee for the said garnishee's counsel, and that if the said garnishee refuse or neglect, on demand by the sheriff, to pay the same, then the same to be levied of the said garnishee according to law, as in the case of a judgment against it for its proper debt, and also that the plaintiff have leave to issue a writ of *fieri facias* against the above-named defendant for the sale of the said 77 shares of *'* National Gas Trust stock' and 33 shares of the capi-

tal stock of the Eighth National Bank of Philadelphia, pledged by the defendant with the garnishee, subject to the garnishee's claim under said pledge of the sum of $17,831, with interest thereon from April 22, 1897, or so much thereof as shall be necessary to satisfy the plaintiff's judgment against the defendant in this case, with costs."

The rule to vacate and dismiss the proceedings in attachment for want of jurisdiction in the Court of Common Pleas was discharged.

The cause was carried to the Supreme Court of Pennsylvania, where the judgment of the Court of Common Pleas was affirmed.

By the Revised Statutes of the United States it is provided :

"§ 5234. On becoming satisfied, as specified in sections 5226 and 5227, that any [national banking] association has refused to pay its circulating notes as therein mentioned, and is in default, the Comptroller of the Currency may forthwith appoint a receiver and require of him such bond and security as he deems proper. Such receiver, under the direction of the Comptroller, shall take possession of the books, records and assets of every description of such association, collect all debts, dues and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct, and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the Comptroller, and also make report to the Comptroller of all his acts and proceedings.

"§ 5235. The Comptroller shall, upon appointing a receiver, cause notice to be given, by advertisement in such newspapers as he may direct, for three consecutive months, calling on all persons who may have claims against such association to present the same and make legal proof thereof.

"§ 5236. From time to time, after full provision has been first made for refunding to the United States any deficiency in

redeeming the notes of such association, the Comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated; and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association, or their legal representatives, in proportion to the stock by them respectively held."

"§ 5242. All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking asso-. ciation, or of deposits to its credit; all assignments of mortgages, sureties on real estate or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action or proceeding in any state, county or municipal court."

Sections 5234, 5235 and 5236 above quoted have reference to the affairs and property of national banks in the hands of receivers and the administration of its assets by the Comptroller; and the words in section 5242, "no attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action or proceeding in any state, county or municipal court," are to be construed in connection with the previous parts of the same section declaring null and void certain transfers, assignments, deposits and payments made after the commission by the bank "of an act of insolvency, or in contemplation thereof," with the intent to prevent the application of the bank's assets in the manner prescribed by Congress, or with a view to the preference by the

bank of one creditor to another.    Whatever may be the scope
of section 5242, an attachment sued out against the bank *as
garnishee* is not an attachment against the bank or its property,
nor a suit against it, within the meaning of that section.    It is
an attachment to reach the property or interests held by the
bank for others.    After the Chestnut Street National Bank
had been served as garnishee with the attachment sued out in
the Long suit but before it went into the hands of a receiver,
it admitted in its answers to special interrogations in the suit
against Long that it was indebted to Long on a clearing-house
due bill, and also that it held as collateral security for his debt
to it certain shares of the stock of the National Gas Trust, as
well as certain shares of the stock of the Eighth National Bank
of Philadelphia.    By the service of the attachment upon the
bank, the plaintiff in the attachment acquired a right to have
the money and property belonging to Long in the hands of the
bank applied in satisfaction of its judgment against him, subject
of course to the bank's lien for any debt due to it at that time
from him.    The bank therefore became bound to account to
the plaintiff in the attachment for whatever property or money
it held for the benefit or to the use of Long at the time the at-
tachment was served upon it.    And the right thus acquired by
the service of the attachment was not lost by the suspension of
the bank and the appointment of the receiver.    The assets of the
bank passed to the receiver burdened, as to the interest that
Long had in them, with a lien in favor of the plaintiff in the
attachment which could not be disregarded or displaced by the
Comptroller of the Currency.

We must not, however, be understood as holding that the
distribution of the bank's assets in the hands of the receiver
could have been in anywise directly controlled by the state
court or seized under an attachment or execution in the hands
of any state officer.    On the contrary, the direction in the
statute that the receiver pay over all moneys realized by him
from the assets of the bank to the Treasurer of the United
States, subject to the order of the Comptroller, furnished a rule
of conduct for him which neither an order of nor any proceed-
ings in the state court could affect, modify or change.    The

scheme of the statute relating to suspended national banks is that from the time of a bank's suspension all its assets, of whatever kind, as they are at the time of suspension, pass in the first instance, to the receiver, the proceeds thereof to be distributed by the Comptroller among those whose claims are proved to his satisfaction or are adjudicated by some court of competent jurisdiction. So when the Chestnut Street National Bank suspended and went into the hands of a receiver the entire control and administration of its assets were committed to the receiver and the Comptroller, subject, however, to any rights of priority previously acquired by the plaintiff through the proceedings in the suit against Long.

It results that the state court did not err in overruling the motion of the receiver to vacate and dismiss the attachment issued in the suit brought against Long and served upon the bank as garnishee prior to its suspension. The proceedings in the state court prior to the appointment of a receiver were all in due course of law. We do not understand that to be controverted. But we are of opinion that the order of judgment of May 21, 1898, was erroneous in some particulars. As the bank did not cease to exist as a corporation upon its suspension and the appointment of a receiver, it was competent for the state court to determine, as between the plaintiff in the attachment and the bank, what rights were acquired by the former as against the latter by the service of the attachment; and its judgment, thus restricted, could have been brought to the attention of the Comptroller for his guidance in distributing the assets of the bank. To this extent the judgment below is affirmed. But, for the reasons already stated, we hold that the state court had no authority to order execution in favor of the plaintiff of any dividends upon the money on deposit in the bank to Long's credit at the time the bank was served with the attachment, and direct the sale of the shares of stock originally held by the bank as collateral security, but which passed upon the suspension of the bank to the custody of the receiver. This part of the judgment should be set aside. It is proper to say that the rights acquired by the defendant in error under the garnishee proceedings can be made effective upon application

to the Comptroller, to whom Congress has entrusted the power to distribute the assets of a suspended bank among those entitled thereto.

The decree is reversed to the extent indicated, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*