### FARMERS' BANK OF ALAMO, GA., v. UNITED STATES FIDELITY & GUARANTY CO.

Circuit Court of Appeals, Fifth Circuit.
October 25, 1928.

No. 5277.

C. C. Crockett, of Dublin, Ga. (W. W. Larsen, of Dublin, Ga., and I. H. Corbett, on the brief), for appellant.

T. E. Ryals, R. L. Anderson, and R. L. Anderson, Jr., all of Macon, Ga., for appellee.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

BRYAN, Circuit Judge. This is an appeal from a decree for $3,346.45 in favor of the commissioner of roads and revenues of Wheeler county, Ga., against J. F. Wright, sheriff of that county, as principal, the United States Fidelity & Guaranty Company, as surety on the sheriff's bond, and the Farmers' Bank of Alamo, Ga. The decree provides that, upon payment of the amount adjudged, the surety shall be subrogated to the rights of the commissioner as against the sheriff and the bank. It was shown without dispute that the amount of the decree represented the sheriff's shortage in tax moneys collected by him. All of this money was deposited by the sheriff in the bank to the credit of "J. F. Wright Tax Account," and he had drawn it out upon checks signed by himself as sheriff, on a separate account which he kept at the bank. The bank defended on the ground that it paid out the money deposited in the tax account in pursuance of instructions from Wright to pay checks out of it whenever there were not sufficient funds in his account as sheriff. In the tax account were included small amounts which the sheriff was entitled to as commissions upon collections. The bank was aware of this, as its cashier usually calculated the amount of commissions that were mingled with public funds. But there is no contention that officials of the bank believed that the withdrawals from the tax account were, or were intended to be, only for commissions.

Both the special master and the District Judge held that the bank had actual knowledge of the trust character of the funds in the tax account, and notwithstanding this knowledge honored checks in the aggregate amount of the decree, which were not made to an official entitled to receive tax money, but which showed on their face that they were given to discharge personal obligations of the sheriff. The evidence amply sustains these conclusions.

The bank appeals, and contends that, as it did not receive any of the money on a debt due to it, or otherwise participate in the misappropriation, it cannot be held liable.

One who deposits money in a bank as a trustee has the right to withdraw it in the same capacity. If the bank is without notice or knowledge to the contrary, it has a right to presume that the depositor will not violate his trust; but, if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal and

use of the fund, it then becomes liable for the misappropriation. 3 R. C. L. 549. Because of the actual knowledge which the appellant bank had of the misappropriation by the sheriff of the funds in the tax account, we are of opinion that the decree appealed from is correct. The bank did not act in the belief that no more than the small commissions of the sheriff were being withdrawn. On the contrary, it charged to the tax account checks that were drawn against the sheriff's personal account. It had full knowledge that the sheriff was withdrawing public money in payment of his personal debts, and was bound to know that he was misappropriating money deposited and designated as a trust fund.

The decree is affirmed.

DAWKINS, District Judge (concurring). I concur in the decree in this case, for the reason that I think the bank aided and facilitated the sheriff in misappropriating the tax funds by cashing checks drawn upon another account as sheriff, both by himself and the members of his family, upon oral instructions to do so. On the other hand, I do not think that a bank should be held liable merely because of knowledge on the part of one or more of its employees that checks drawn in proper form, that is, signed in the manner agreed upon when the deposit was made, were actually being given for private purposes of the depositor. In other words, I do not believe it was any of the bank's business, and it did not have to inquire or act in the matter one way or the other so long as the checks were correctly drawn, for there was no privity between the bank and the beneficiary of the trust. It simply owed the duty not to participate in or facilitate the commission of a fraud by the tax collector. The banking business would be seriously handicapped, if courts should hold that such institutions had to censor the checks of their thousands of customers who deposit money in a representative or fiduciary capacity.