## HILLSDALE GROCERY CO. v. UNION & PEOPLE'S NAT. BANK OF JACKSON, MICH., et al.

No. 11024.

District Court, E. D. Michigan, S. D.
March 20, 1934.

McLeod, Fixel, Abbott & Fixel, of Detroit, Mich., for petitioner.

Bisbee, McKone, Wilson & King, of Jackson, Mich. (David W. Kendall, of Jackson, Mich., of counsel), for receiver, conservator, and Union & People's Nat. Bank of Jackson.

774

KNIGHT, District Judge.

On February 14, 1933, when a bank moratorium in the state of Michigan was declared by the Governor of that state, the Union & People's National Bank of Jackson, Mich., as trustee in the estate of the Hillsdale Grocery Company, bankrupt, had on deposit in the Union & People's National Bank $2,526.98. This proceeding was instituted to have this deposit declared a preference and under a summary order to compel the payment thereof by the conservator. Since the conclusion of the hearings in this proceeding, the aforesaid bank was declared to be insolvent by the Comptroller of the Currency, and a receiver has succeeded the conservator. This court is asked to review and reverse the order of the referee in bankruptcy granting the prayer of the petitioner and making summary directions in the matter of enforcement.

This case differs in certain respects from In re Battani et al. (D. C.) 6 F. Supp. 376, recently decided by me, though certain of the same questions are involved.

■ The funds in question were deposited in violation of General Order in Bankruptcy No. 46 (11 USCA § 53), in that the local bankruptcy court never authorized such deposit. No question is raised regarding this statement of fact. Such general order was not offered in evidence. The receiver for the bank asserts the court cannot now take judicial notice of this rule. This can hardly be considered seriously. By the very nature of its authority the court may take such notice. The referee has found as a fact that the bank depository knew or should have known of the rule. I do not find support for this finding. But the receiver claims that the bank had the right to presume the rule had been observed. The diligence of counsel has pointed to no authority which supports this position.

■ Section 30 of the Bankruptcy Act (11 USCA § 53) empowers the Supreme Court to make all necessary rules as to procedure and for carrying the Act into effect. General Order 46 (11 USCA § 53) was adopted by the Supreme Court and became effective June 1, 1931. Except it conflict with the Constitution or laws, a rule adopted pursuant to authority conferred by law has the force and effect of law. "A rule of the court thus authorized and made, has the force of law, and is binding upon the court, as well as upon parties to an action, and cannot be dispensed with to suit the circumstances of any particular case," was declared many years ago in Thompson v. Hatch, 3 Pick. (Mass.) 512, and that statement of the law has uniformly been followed. Rio Grande Irrigation & Colonization Co. v. Gildersleeve, 174 U. S. 603, 19 S. Ct. 761, 43 L. Ed. 1103; Clawans v. Whiteford et al., 60 App. D. C. 412, 55 F.(2d) 1037; Woodbury v. Andrew Jergens Co. (C. C. A.) 61 F.(2d) 736. In R. C. L. vol. 7, 1027, cited on behalf of the receiver, we find this significant expression: "Rules adopted by a court without exceeding the limits of its authority are often spoken of as having the effect of rules enacted by the legislature, or positive law, and therefore, as being obligatory on the court and on the parties."

■ Section 61 of the Bankruptcy Act (11 USCA § 101) provides for the designation of a depository, "for the money of bankrupt estates," and that such depository shall give bond. Where a banking institution was named receiver or trustee, it was not deemed always necessary that the deposits of the estate be made in a separate institution, and a banking institution acting as trustee or receiver was authorized to hold the money on certain conditions. No. 46, General Orders in Bankruptcy (11 USCA § 53). The rule recognized the necessity of the approval of the Circuit Judges of the circuit in respect to the financial ability of depository. It provides that a majority of Circuit Judges may adopt a rule authorizing the holding of such deposits under "such provisions for the supervision and control * * * as the court may deem adequate." The bank as trustee occupies the same relative position as an individual. He is required by law to deposit funds of the estate in a depository. The bank was a designated depository, but it, like an individual, should have recognized that it could not hold its own deposits without specific authority of law. It was the bank's business to know its right in this respect, just as it was to know it was a designated depository for other bankrupt funds. It did not do this, and by virtue of accepting such deposits, such deposits become ex maleficio trust funds provided the deposits are traced to and augment the assets of the bank. Hancock County et al. v. Hancock National Bank of Sparta (C. C. A.) 67 F.(2d) 421; American Surety Co. v. Jackson (C. C. A.) 24 F.(2d) 768; Board of Commissioners v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100; Conqueror Trust Co. v. Fidelity & Deposit Co. of Md. (C. C. A.) 63 F.(2d) 833; Citizens' & Southern Bank v. Fayram (C. C. A.) 21 F.(2d) 998; Farmers' Bank of Alamo v. United

States Fidelity & Guaranty Co. (C. C. A.) 28 F.(2d) 676; Alexander v. Security Bank & Trust Co. (D. C.) 273 F. 258.

The Referee has found that all the cash received by the bank, as local circuit court receiver, receiver in bankruptcy, and trustee in bankruptcy, went into the bank's general cash fund and all of the checks received by the bank in the same capacities were credited to the account of the bank at the Federal Reserve Bank of Chicago, Detroit Branch. He has also found that since September 30, 1930, and until the appointment of the conservator, the bank's cash, including its deposit with solvent banks, has always exceeded the total of bankruptcy and local circuit court receivership funds on deposit with the bank, and that the balance in favor of the bank in the Federal Reserve Bank of Chicago, Detroit Branch, has always exceeded the bankruptcy and receivership funds on deposit with the bank. The Referee has also found that all the deposits mentioned in these several deposits augmented the assets of the bank, that they became a part of said assets, and that the balance aforesaid of $2,526.98 was included in said assets when the same were taken into custody and control of the conservator. It seems to me the findings of the Referee in this respect are supported by the record. The deposits and withdrawals through the different stages are numerous. All deposits appear to have been made by cash and by deposits of checks, as hereinbefore stated in such findings. The old rule as regards the tracing of funds and augmentation of assets was that trust funds wrongfully misapplied cease to be such when they were mixed and confounded with other funds. Philadelphia National Bank v. Dowd (C. C.), 38 F. 172, 2 L. R. A. 480; Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696. The more modern rule is that where the money increases the assets of the holder, it may, under certain circumstances, be made the subject of a trust, in order to accomplish the ends of justice. Harmer v. Rendleman (C. C. A.) 64 F.(2d) 422. The latter rule has been limited to the extent that it must be clearly shown that the trust property has directly augmented the fund upon which the trust is to be declared, "so that a court of equity can see with certainty that the trust property is in his (receiver's) hands." Harmer v. Rendleman (C. C. A.) 64 F.(2d) 422, 423; Empire State Surety Co. v. Carroll County et al. (C. C. A.) 194 F. 593. I think this latter rule has been met in this case. I may add that the case also presents a stronger case in favor of augmentation than is usually found since the receiver and the depository are one and the same. The decisions by the courts on the question of augmentation are many. Aside from those hereinbefore mentioned, we may cite: People's National Bank v. Moore (C. C. A.) 25 F.(2d) 599; Fidelity & Deposit Co. of Md. v. Farmers' Bank (C. C. A.) 44 F.(2d) 11. In my opinion the finding of the Referee that the deposit in this estate augmented the assets of the depository should be sustained.

Holding that these are trust funds, I come to the question of legality of the summary order directing the payment of such funds by the conservator. The Comptroller of the Currency is directed by statute to make a ratable distribution of the funds of the insolvent bank, and the receiver acts under his direction. 12 USCA § 194; Earle v. Pennsylvania, 178 U. S. 449, 20 S. Ct. 915, 44 L. Ed. 1146. Service of a certified copy of the judgment entered upon this decision and proof of the nonpayment of such judgment are sufficient proof of a claim. Claims adjudicated in a court of record are expressly directed to be paid ratably. 12 USCA § 194. The funds of this estate are not in the hands of the trustee as such. They are in the hands of the insolvent depository in which payment of the claim is to be made pursuant to statute. The facts in Earle v. Pennsylvania, 178 U. S. 449, 20 S. Ct. 915, 917, 44 L. Ed. 1146, are comparable. There an attachment against an insolvent bank was sustained but payment was directed to be withheld pending distribution by the Comptroller of the Currency. The language of the court in that case is in point: "The scheme of the statute relating to suspended national banks is that from the time of a bank's suspension all its assets, of whatever kind, as they are at the time of suspension, pass, in the first instance, to the receiver, the proceeds thereof to be distributed by the Comptroller among those whose claims are proved to his satisfaction or are adjudicated by some court of competent jurisdiction. So, when the Chestnut Street National Bank suspended and went into the hands of a receiver the entire control and administration of its assets were committed to the receiver and the Comptroller, subject, however, to any rights or priority previously acquired by the plaintiff through the proceedings in the suit against Long." In Re Bologh (D. C.) 185 F. 825, it was held that the bankruptcy court could not order the Superintendent of Banks summarily to pay over moneys and the distinction between the authority of the court over property held by the trustee and money in the hands of the depository is pointed out.

In Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 20 L. Ed. 840, it was held that payment of a judgment must wait distribution under the banking law. The orderly administration of the affairs of the insolvent bank require that the assets be marshaled so that the rights of creditors as between themselves may be determined. Preferred claims necessarily must be paid first, but all preferred claims might be required to be paid ratably among themselves. The proper course, it seems to me, is to present to the receiver proof of the claim on account of these deposits as a preferred claim and to await the payment thereof by the Comptroller of Currency, through the receiver, in the regular and orderly administration of the affairs of the insolvent bank.

It does not seem to me to be necessary in this opinion to pass specifically upon each conclusion of law found by the Referee. With the exception of the finding that the bond given by the depository is not such a bond as contemplated by law, I think the opinion declares the view of the court as regards the other findings. In Re Battani et al. (D. C.) 6 F. Supp. 376, the question raised with regard to the validity of this bond was passed upon by me, and I held that the bond given by the same surety as that in this proceeding was a valid bond. I adhere to that decision now, and the finding of law of the Referee to the contrary is reversed.

Findings may be submitted in accordance with this decision.