**LOUISIANA & N. W. R. CO. v. WYLIE.**

No. 4902.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 5, 1934.

Drew & Richardson, of Minden, for appellant.

Seals & Atkins, of Homer, for appellee.

TALIAFERRO, Judge.

On February 25, 1933, plaintiff's agent at Gibsland, La., acquired from the First National Bank in that town two of its cashier's checks and had them made payable to Homer National Bank of Homer, La., for $341.80 and $24.95, respectively. To secure issuance of the check for the larger amount, said agent delivered to the bank several checks drawn on it by its own depositors which he had taken in for plaintiff in due course of business. The smaller check was paid for with cash and currency. Said two cashier's checks were promptly sent by said agent to the Homer National Bank for deposit to plaintiff's checking account and credit therefor duly given.

The First National Bank in Gibsland closed its doors for business on March 2, 1933; and has not since functioned as a banking institution. In due course, but after March 2d, the two cashier's checks were presented to it for payment, through banking channels, but were not honored because the bank was closed. The Homer National Bank then debited plaintiff's account therewith, and returned the checks to it. On March 24, 1933, Hugh Wylie was appointed conservator of the Gibsland Bank as authorized by Bank Conservation Act of Congress of March 9, 1933 (12 USCA §§ 201–211), but thereafter John Paul Jones was appointed by the Comptroller of the Currency as Federal Receiver of said bank for the purpose of winding up and liquidating its affairs. He was impleaded as defendant.

This suit was instituted by plaintiff against the conservator, upon his refusal to pay said cashier's checks in full. Plaintiff's position and its contentions are clearly reflected from the following articles quoted from its petition, viz.:

"That in the above transaction, detailed in paragraph 4 of this petition, the said First National Bank in Gibsland acted as your petitioner's agent in collecting the several small checks and money, totaling Three Hundred Sixty-six and 75/100 Dollars, hereinabove referred to, to the end and purpose that same might be remitted to your petitioner in the

Town of Homer, Claiborne Parish, Louisiana, where your petitioner carries its regular account with the Homer National Bank, in said Town, and where your petitioner desired to deposit the said sum of Three Hundred Sixty-six and 75/100 Dollars, the said cashier's checks having been drawn to the order of the Homer National Bank for the purpose of depositing same to your petitioner's credit in said institution. * * *

"That the said Hugh Wylie, Conservator, has refused, and continues to refuse, to pay over and return to your petitioner the proceeds of the checks and money which your petitioner left with the First National Bank in Gibsland on or about February 25, 1933, as aforesaid.

"That on February 25, 1933, and immediately after your petitioner left with the said First National Bank in Gibsland the said sum of Three Hundred Sixty-six and 75/100 Dollars in checks and cash, as aforesaid, and continuously since said time there has been in the vaults of said banking institution and in the possession of said institution a sum of money greatly in excess of the sum of Three Hundred Sixty-six and 75/100 Dollars, and that a sum greatly in excess of said sum of Three Hundred Sixty-six and 75/100 Dollars is now in the vaults of said institution, held as, and continued to be held as, the property of said institution by the said Hugh Wylie, Conservator, and the apparent assets of said First National Bank in Gibsland have in consequence been augmented in the said sum of Three Hundred Sixty-six and 75/100 Dollars.

"That by reason of the transaction which your petitioner had with the First National Bank in Gibsland and its failure to pay the said two cashier's checks, or to account to your petitioner or to return the said sum of Three Hundred Sixty-six and 75/100 Dollars when demanded, all as hereinabove alleged, under the law your petitioner has a first lien and privilege on all of the property and assets of the said First National Bank in Gibsland superior in rank to the claims of other creditors of said institution and superior in rank to all general privileges, except those for law and judicial charges, and should be paid its said claim by preference and priority over all persons, creditors and claimants whatsoever, save law and judicial charges.

"That in the alternative, if the Court should hold that your petitioner is not entitled to a lien and privilege on all of the assets of the First National Bank in Gibs-land, then in that event, your petitioner alleges that it is the owner of the sum of Three Hundred Sixty-six and 75/100 Dollars, now in the vaults and in the possession of the said First National Bank in Gibsland, under the control and supervision of Hugh Wylie, Conservator, and that the said Hugh Wylie, in his said capacity as Conservator, should be ordered and directed to pay over and return to your petitioner the said sum of Three Hundred Sixty-six and 75/100 Dollars."

Defendant admits that the insolvent bank is due plaintiff the amount of the checks sued on, but denies that plaintiff is entitled to be paid by preference over ordinary creditors from the bank's assets and denies that under federal or state law there is any privilege to secure preference payment of the checks from said assets.

The lower court gave plaintiff judgment against the receiver for the amount of the two cashier's checks, and recognized a privilege on the assets of the bank in his hands in favor of plaintiff for the amount of the larger check only, or for $341.80. The receiver has appealed.

In this court plaintiff concedes the correctness of the trial court's judgment in holding that there was no privilege under the law to secure preference payment from the bank's assets of the check for $24.95.

■■ The sole question at issue in the case now is whether the law, state or federal, gives plaintiff a privilege or preference right over ordinary creditors of the bank, as against its assets, for payment of the amount of the $341.80 check. Plaintiff relies exclusively upon Act No. 63 of 1926 of the Legislature of Louisiana as sustaining its position; while defendant as stoutly denies that the Louisiana act is applicable to the facts of this case, and affirms that the federal laws deny to creditors of an insolvent national bank any right of preference against its assets, arguing that all creditors must share ratably from such assets; and that if there be conflict between the laws of the two, the federal law must prevail.

Act No. 63 of 1926, so far as needs be considered here, reads as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That when any bank receives as agent (whether as agent of another bank or of any person, firm or corporation) for collection and remittance or delivery to its principal and not for deposit any bill, note, check, order, draft, bond, receipt, bill of lading, or other evidence of indebtedness, or other instrument, and collects or realizes

any money on the same, and has not deposited same to the credit of said principal, the principal shall have a privilege on all of the property and assets of said agent bank for the amount so collected or realized by said agent bank, which privilege shall be superior to the claims of all depositors of said agent bank, the claims of all creditors of said agent bank having no privilege and to all other general privileges on the property and assets of said agent bank, except those for law and judicial charges."

In brief counsel of plaintiff say:

"Plaintiff does not claim a privilege by virtue of being the holder of cashier's checks but bases its privilege on the fact that it left certain checks with the Bank of Gibsland for collection, and not for deposit, and that those checks were collected."

. We are unable to agree with this position. Plaintiff's local agent held checks on the Gibsland Bank signed by its own depositors. These checks were not left with the bank for collection, but were exchanged for the bank's own check. The cashier's checks represented the bank's credit and this is what plaintiff acquired. Jewett v. Yardley (C. C.) 81 F. 920; In re Bolognesi & Co. (C. C. A.) 254 F. 770. Fictively, the agent collected the checks and in turn bought the cashier's check with the collections. No fiduciary relationship arose from the transaction. The relation that did follow the transaction was that of creditor and debtor. Of course, we know the money was not actually counted out to him, but in effect the transaction was closed as though it had been. The checks were evidently good or else they would not have been accepted by the bank. They were charged against the accounts of the persons who drew them, thereby reducing the bank's liability to that extent, and to balance this reduction in its deposits the cashier's check was carried as an outstanding liability. The assets of the bank were to no extent augmented by the transaction. Its liability to the several persons who gave checks to plaintiff's agent was shifted to plaintiff by the issuance and delivery of the check payable to the Homer Bank. If plaintiff's agent had presented the checks for payment in cash and currency and had received payment in this manner and had then purchased the cashier's check, it would hardly be contended that the holder of such check enjoyed a preference right against the bank's assets for full payment thereof. We see no difference, in principle, between such a case and the one we are considering.

The above-quoted section of the 1926 act does not cover, nor was it intended to cover, a case wherein the facts are as we are presently considering. That law was intended to apply, as its context clearly indicates, to a case where a bank, as agent, receives for collection, and not for deposit, commercial paper, for the purpose purely of collecting same, and after collecting it does not place the proceeds thereof to the credit of the person intrusting the business to it. It seems clear that if the customer has been credited with the amount of the collection, regardless of what should subsequently happen in the bank's affairs, no privilege arises to give any preference to the customer. It is only in case the paper has been collected by the bank and the amount realized has not been credited to the customer's account that the privilege created by this act applies. This is true because the bank's assets have been augmented to the extent of the amount collected and the fund is held in trust by the bank subject to the customer's disposition. It is also true because this fund has not become mingled with the general funds of the bank, its identity not having been destroyed. This reasoning is not in conflict with Hall, Inc., v. Farmers' Trust & Savings Bank of Lockport, 177 La. 659, 148 So. 909, 910, relied on by plaintiff, but in keeping with it. In that case had plaintiff been unconditionally credited with the proceeds of the drafts it intrusted to the Bank of Lockport to collect for its account, we take it, the court would not have held that it had a privilege against the bank's assets after it closed.

Plaintiff also cites Joffrion-Woods, Inc., v. Brock, State Bank Com'r (La. App.) 154 So. 660, as supporting its position. That case was decided by the First Circuit and was recently affirmed by the Supreme Court, to which it had gone under writ of review. The facts of the case are entirely different from those of the case at bar. In that case checks of a depositor of the Bank of White Castle, given to the plaintiff, were indorsed by it and deposited in the St. James Bank at Lutcher, La., and were sent by it to the Hibernia Bank & Trust Company of New Orleans for collection, which bank in turn sent the check to the Bank of White Castle for collection and payment. The check was paid by charging it to the drawer's account and proceeds remitted to the Hibernia Bank in a draft of the Bank of White Castle on it, which was dishonored because of lack of funds to its credit to pay same. The Bank of White Castle was then closed by the Bank Commissioner. It was held by the Court of Appeal, and by the

Supreme Court, that the payee of the check was entitled to be paid by preference from the assets of the bank the full amount of its check which had been charged to its account. We have no criticism to register against these decisions.

Defendant's contention that, even granting that plaintiff's claim against the receiver enjoys a right of preference and privilege against the insolvent bank's assets under the state law, such preference right is now inoperative because the authority of the federal government as regards the operation and liquidation of national banks is paramount, and further because section 5236 of the United States Revised Statutes (12 USCA § 194) provides,

"Dividends on adjusted claims; distribution of assets. From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction," is not well founded. · In support of this contention they cite Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700, and Fiman et al. v. State of South Dakota (C. C. A.) 29 F.(2d) 776. The first of these cited cases, as appears from its syllabus, holds:

"A preference, under the New York law, of the debt of an insolvent national bank for a deposit by a savings bank, is invalid under U. S. Rev. Stat. §§ 5236, 5242 [12 USCA §§ 91, 194], which require a ratable distribution of the assets of insolvent national banks, and prohibit preferences made in contemplation of or after committing an act of insolvency."

In the second case it was held:

"State of South Dakota, having adopted common law of England, is entitled to priority of payment of all debts due it out of debtor's property as general rule; but National Bank Act (12 USCA §§ 21–200) constitutes complete code of laws for organization, control, and dissolution of national banks, and is necessarily superior to claimed right of state to preference by reason of common law."

In each of these cases the fact of insolvency of the national bank was the happening that brought the lien, sought to be enforced, into existence. The lien or preference right had no prior existence, and therefore had not attached prior to the state of insolvency. A contrary rule prevails where it appears that the preference right, lien, or privilege, created by or arising under a state law, existed and/or attached prior to the state of insolvency of the bank.

In Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 151, 36 L. Ed. 1059, Chief Justice Fuller, after discussing and quoting the statutory law relied on by defendant in the present case, said:

"The argument is that these sections by implication forbid this set-off, because they require that after the redemption of the circulating notes has been fully provided for, the assets shall be ratably distributed among the creditors, and that no preferences given or suffered, in contemplation of or after committing the act of insolvency, shall stand. And it is insisted that the assets of the bank existing at the time of the act of insolvency include all its property without regard to any existing liens thereon or set-offs thereto.

"We do not regard this position as tenable. Undoubtedly any disposition by a national bank, being insolvent or in contemplation of insolvency, of its choses in action, securities, or other assets, made to prevent their application to the payment of its circulating notes, or to prefer one creditor to another, is forbidden; but liens, equities, or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency and not in contemplation thereof, are not invalidated. The provisions of the act are not directed against all liens, securities, pledges, or equities, whereby one creditor may obtain a greater payment than another, but against those given or arising after or in contemplation of insolvency."

The same principle was discussed and applied in Earle, Receiver, v. Commonwealth of Pennsylvania, 178 U. S. 449, 20 S. Ct. 915, 44 L. Ed. 1146. Part of the syllabus of that case reads:

"The suspension of a national bank and the appointment of a receiver do not defeat a right previously acquired by service of an attachment against the bank as garnishee, but the assets pass to the receiver burdened with a lien in favor of the plaintiff in the attachment, which cannot be disregarded or displaced by the Comptroller of the Currency."

In the recent case of Fidelity & Deposit Co. of Maryland v. Howard (C. C. A.), reported in 67 F.(2d) 961, this same question was very thoroughly considered. In that case the court was called upon to pass on the validity of a statute of the state of Georgia

(Civ. Code 1910, § 218), dealing with the bond of the state treasurer, which contained this provision:

"And a lien is hereby created in favor of the State upon the property of the treasurer to the amount of said bond," etc.

A national bank, wherein the treasurer had several thousand dollars of the state's funds deposited, failed. The treasurer's surety (plaintiff in the suit) promptly paid to the state the amount of said deposit in full and took an assignment and subrogation of the state's rights against the assets of the insolvent bank. The surety then brought suit to have the lien to which it had been subrogated enforced by preference on the bank's assets. In passing the court said:

"But it is urged that the lien can have no operation in case of insolvency because of 12 USCA § 91, prohibiting preferences made in view of insolvency, and section 194 requiring the payment of ratable dividends to creditors. These statutes do not affect liens validly existing against the bank's property before receivership. They were considered in Scott v. Armstrong, 146 U. S. 499, and on page 510, 13 S. Ct. 148, 151, 36 L. Ed. 1059, it is said: 'Liens, equities, or rights arising by express agreement, or implied from the nature of the dealings between the parties, or by operation of law, prior to insolvency and not in contemplation thereof, are not invalidated.' And again in Earle v. Pennsylvania, 178 U. S. 449, at page 454, 20 S. Ct. 915, 917, 44 L. Ed. 1146: 'The right thus acquired by the service of the attachment was not lost by the suspension of the bank and the appointment of the receiver. The assets of the bank passed to the receiver burdened, as to the interest that Long had in them, with a lien in favor of the plaintiff in the attachment which could not be disregarded or displaced by the Comptroller of the Currency.' The lien here involved, as we have pointed out, arises by a voluntary contract and exists from the date of the bond of which it forms a part. In spite of its generality it is not a priority arising on the insolvency of the bank. Insolvency is nowhere mentioned in the statutes defining it. It is true that the lien seldom needs assertion unless insolvency occurs, but that is true of all security. The lien on all property of the signers of the bond may be compared to the tax lien on all property of the taxpayer. That such tax liens are true liens and not priorities on insolvency we held in enforcing them against assets in bankruptcy. In re Brannon (C. C. A.) 62 F.(2d) 959. The preference under state laws which was attempted to be enforced against bank assets in Davis v. Elmira Sav. Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700, was a priority arising only on insolvency, indeed a part of the state statutes for administering an insolvent bank, and was in conflict with section 194."

This case went to United State Supreme Court on writ of certiorari, and was affirmed under the title of John C. Lewis, Receiver, v. Fidelity & Deposit Co. of Maryland, 292 U. S. 559, 54 S. Ct. 848, 78 L. Ed. 1425, 92 A. L. R. 794. The court, discussing the lienable character of the debt in question, said:

"National Bank Act, §§ 50, 52 [see 12 USCA § 194 and § 91 and note], forbidding preferences made in view of insolvency, do not prohibit liens given prior to the insolvency and not in contemplation thereof, whether they arise out of express agreements, are implied, or arise by operation of law."

■ In the instant case the record does not disclose when the Gibsland Bank actually became insolvent, if such condition existed prior to March 2, 1933. In the absence of proof to the contrary, that date may be accepted as the true date of the insolvency. The preference rights of plaintiff, if any, arose and were fixed prior to that date.

■ We do not think there is merit in the alternative demand of plaintiff. Our reasoning infra covers this feature of the case. There was at no time any setting aside or segration of any part of the bank's funds to be applied to the payment of the cashier's check sued on. There was no collection of the checks given for the cashier's check, within the meaning of the Louisiana statute relied on, and, for this reason, no fund, equal to the aggregate of such checks ever, in reality or fictively, existed independent of the bank's general funds.

For the reasons herein assigned, the judgment appealed from is amended by striking therefrom the recognition of privilege and preference right in plaintiff's favor against the property and assets of the First National Bank of Gibsland now in hands of John Paul Jones, receiver, and, as amended, said judgment is affirmed with costs.

DREW, J., recused.