### WAY et al. v. CAMDEN SAFE DEPOSIT & TRUST CO. et al.

No. 5485.

District Court, D. New Jersey.

Oct. 29, 1937.

Robert K. Bell, of Ocean City, N. J., for defendant receiver.

Bourgeois & Coulomb, of Atlantic City, N. J., opposed.

AVIS, District Judge.

The plaintiffs, as substituted trustees appointed by this court to take over the execution of a certain trust created by the First National Bank of Ocean City, N. J. (hereinafter called the bank), now insolvent, bring this action for the purpose of discovering the amount of money the trust is entitled to from the securities and funds of the bank placed in its trust department to secure trust funds, used by the bank in its commercial department, and for decrees appointing a trustee or trustees to take over and liquidate the entire trust fund now in the hands of the receiver of said bank.

The bill sets out the date of insolvency of the bank, the taking over by the Comptroller of the Currency, and the appointment of a receiver; that the bank at the time of insolvency had certain trust funds and property, the administration of which devolved upon the receiver on his appointment; that the plaintiffs were appointed substituted trustees for the GG Mortgage Pool on March 13, 1933; that the bank had collected the amount due on a certain mortgage in this pool in the sum of approximately $70,000, which was not turned over to the substituted trustees.

The bill then sets out sundry other trusts which were controlled by the bank at the time of its insolvency, including private and court trusts and also the mortgage pools; that the bank had set aside certain collateral in its trust department to secure the moneys intrusted to it, and that the plaintiffs and defendants claim to have some interest in these trust securities; that the receiver of the bank turned over to the plaintiffs certain securities and deeds for property, but neglected to pay $72,500, collected on sundry mortgages theretofore placed in the trust by the bank, to the GG Mortgage Pool.

The bill then sets out certain securities in the hands of the bank in its trust department, held as collateral for trust funds, and alleges that the said securities so reported are collateral for the said sum of $72,500 belonging to the GG Mortgage Pool and also for the other trusts enumerated therein.

The bill then alleges that the parties interested in the collateral are unable to agree upon the amount to be allocated to each individual trust, and that the receiver, upon whom the administration of said trust has devolved, is without authority to enter into such agreement.

The prayers are briefly:

(1) That the defendants answer.

(2) That discovery be made as to the claims of all parties interested in the collateral.

(3) That all claimants set forth in detail the basis of their claims.

(4) That this court ascertain and determine the value of securities, and allocate to each claimant his or her proportionate share.

(5) That if the collateral cannot be divided,

(a) A trustee be appointed to sell the collateral and divide the proceeds;

(b) If it is determined the collateral should not be sold, to hold same in care of the trustee until the arrival of an appropriate time to sell;

(c) That the trustee be required to enter into bond.

(6) That writs of subpœna issue.

(7) "That plaintiffs have such other and further relief in the premises as shall be agreeable to equity and good conscience."

Sundry defendants have filed answers; others have made no appearance; and E. O. Howell, Jr., receiver of the bank, has moved to strike the bill of complaint on the ground that this court lacks jurisdiction to entertain the suit.

It will be seen that the effort here is to appoint a trustee in liquidation for all of the securities or funds in the hands of the receiver, which were allocated to the trust department of the bank, and to distribute the fund pro rata to those entitled thereto. The bill does not allege any disagreement between the receiver of the bank and the interested parties, as to the value of trust securities or the amount of any individual claim. It is apparent that the value of the trust securities is not sufficient to satisfy all of the trust claims in full.

Counsel for the receiver relies upon certain congressional enactments as a justification for his claim that the control and proper distribution of the trust assets is in the hands of the Comptroller of the Currency and the receiver duly appointed. The powers and duties of a receiver are set forth in 12 U.S.C.A. § 192, as follows: "Such receiver, under the direction of the comptroller, shall take possession of the

702

books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the comptroller, and also make report to the comptroller of all his acts and proceedings."

A national bank is authorized to act as trustee, etc., under the provisions of 12 U.S.C.A. § 248(k). Under this authority the bank is required to segregate all assets held in any fiduciary capacity from the general assets of the bank and keep a separate set of books and records showing in proper detail all transactions engaged in under authority of this subsection.

The portion of the above statute having special relevance to the issue in the instant case reads as follows:

"Funds deposited or held in trust by the bank awaiting investment shall be carried in a separate account and shall not be used by the bank in the conduct of its business unless it shall first set aside in the trust department United States bonds or other securities approved by the Board of Governors of the Federal Reserve System.

"In the event of the failure of such bank the owners of the funds held in trust for investment shall have a lien on the bonds or other securities so set apart in addition to their claim against the estate of the bank."

"From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated." 12 U.S.C.A. § 194.

█ The direct question here involved does not seem to have been determined by any court, at least counsel have not cited any decision, and I have been unable to find any. However, all decisions examined tend to the conclusion that, as to the funds of insolvent national banks, the authority of the Comptroller is absolute, and that the courts may not interfere except upon a showing of fraud, mismanagement, lack of good faith, dispute as to right of lien, or controversy as to amount.

The exclusive nature of the control of the Comptroller and receiver is stated in Earle v. Pennsylvania, 178 U.S. 449, 20 S. Ct. 915, 44 L.Ed. 1146.

In Hulse v. Argetsinger, D.C.W.D.N.Y., 12 F.2d 933, on page 935, the court, referring to the statute, said: "This provision, it seems to me, plainly gives the Comptroller entire control of the insolvent bank, with the evident purpose of speedily winding up its affairs regardless of the wishes of the stockholders."

In Liberty Nat. Bank of South Carolina v. McIntosh, 4 Cir., 16 F.2d 906, syllabus 2 expresses the conclusion of the court in the following language: "Jurisdiction of Comptroller of Currency in respect to all matters properly within his discretion relative to liquidation of national banks is exclusive, and his action therein is not subject to review."

In Anderson v. Cronkleton, 8 Cir., 32 F.2d 170, on page 171, the court said: "When a national bank becomes insolvent and is taken over by the Comptroller of the Currency and placed in the hands of a receiver all its assets pass to the control of the receiver."

In Taylor v. Spurway, 5 Cir., 72 F.2d 97, the court took jurisdiction of a suit against a receiver, and granted certain restraints because of a finding of gross fraud.

In the case of Gimbel v. Harriman Nat. Bank & Trust Co. of City of New York, 2 Cir., 83 F.2d 153, certiorari denied 299 U.S. 559, 57 S.Ct. 21, 81 L.Ed. 412, the court directed that the plaintiff should have a lien upon certain assets of an insolvent bank deposited to secure trust funds. No suggestion was made in that case tending towards an independent liquidation by substituted trustees, but the court tacitly approved of the liquidation of the trust assets by the receiver.

In Grindley v. First Nat. Bank-Detroit, 6 Cir., 87 F.2d 110, on page 112, the court said: "Section 191, title 12 U.S.C. (12 U.S.C.A. § 191), provides that whenever the

Comptroller of the Currency is satisfied that a national bank is insolvent, he may 'after due examination of its affairs * * * appoint a receiver who shall proceed to close up such association.' By title 12 U.S.C.A. § 192, the receiver was required under the direction of the Comptroller, to take possession of the books, records, and assets of every description of the bank and collect all debts, dues and claims belonging to it. He was further required to 'pay over all money so made to the Treasurer of the United States, subject to the order of the comptroller.' The purpose of these statutes is to place the exclusive control of an insolvent national bank in the hands of the Comptroller of the Currency for the liquidation of its assets through a receiver who acts under his direction. Easton v. Iowa, 188 U.S. 220, 231, 23 S.Ct. 288, 47 L.Ed. 452; Cook County Nat. Bank v. United States, 107 U.S. 445, 448, 2 S.Ct. 561, 27 L.Ed. 537; Port Newark Nat. Bank, etc., v. Waldron, 46 F.2d 296, 299 (C.C.A.3); Liberty Nat. Bank v. McIntosh, 16 F.2d 906, 909 (C.C.A.4); Hulse v. Argetsinger, 12 F.2d 933, 935 (D.C.)."

Counsel for plaintiffs in their brief cite several cases claimed to sustain plaintiffs' position:

The case of American Can Co. v. Williams, 2 Cir., 153 F. 882 only asserted the right of the court to restrain the receiver from transmitting certain property to the Comptroller until the questions at issue in that suit had been determined. This decision was on rehearing.

The original Circuit Court of Appeals case is found in 2 Cir., 149 F. 200, and the only question involved was the right of the court to restrain the payment of assets to the Comptroller pending the determination of the validity of a claimed lien.

The ultimate decision of this controversy in the lower court is found in C.C., 176 F. 816, and it involved the right to the proceeds of a draft which was collected by the receiver. It has no relevancy to the present controversy.

■ The case of Skud v. Tillinghast, 6 Cir., 195 F. 1 is general in its nature and inapplicable to the instant case. Of course, the receiver cannot appropriate for the benefit of the creditors any asset that in equity and good conscience belongs to another.

The effort in the instant case is to take over the administration of a general lot of securities, and to make distribution to those entitled, without any suggestion that the liquidation is being improperly carried on by the receiver. The statute leaves the liquidation to the Comptroller and his receiver.

In Poisson v. Williams, D.C.E.D.N.C., 15 F.2d 582, the issue was with relation to a designated trust fund, for which an independent trustee had been appointed. This substituted trustee was endeavoring to recover from the receiver, not the whole of the bank's trust securities, but only that which it was claimed the bank held in trust for the plaintiff in that suit. The funds in the hands of the receiver admittedly were sufficient to pay all claims, and the court there justly directed that the receiver make payment. The principle in that case is not applicable to the present controversy.

The case of Scott v. Armstrong, 146 U.S. 499, 510, 13 S.Ct. 148, 151, 36 L.Ed. 1059, disposed of the question of set-off, and determined that a debtor of the bank had the right to offset any amount he had on deposit against the claim of the receiver.

So far as I can see that case has no bearing upon the instant controversy. The language in the opinion can refer only to the matter there at issue, and the statement that "ratable dividends" are to be made from what belongs to the bank "and that which at the time of the insolvency belongs of right to the debtor does not belong to the bank" relates, as it reads, to the debtor's right to offset what the bank owes him against any claim which the bank has against him.

The case of Fourth Street Bank v. Yardley, 165 U.S. 634, 17 S.Ct. 439, 41 L.Ed. 855, is not in point. The language quoted in the brief for plaintiffs is academic, and has no bearing upon the right to control and liquidate the trust securities, held by bank at the time of closing as security for moneys held by bank in a fiduciary capacity.

■ If the bank held an individual trust to secure which certain and definite securities had been pledged, as in the case of the GG Pool, I can see the right to appoint a substituted trustee to handle the assets and take over the pledged securities, but the facts in the instant case are that the securities pledged are the property of

the insolvent bank, pledged in toto to secure various accounts.

The right to liquidate and distribute, unless there exists fraud, dispute as to amount, the right of lien, or mismanagement, is lodged in the hands of the Comptroller and his receiver. The proper distribution, in case of any dispute or alleged preferences, may be within the court's jurisdiction; otherwise the court cannot interfere.

I feel that counsel for plaintiffs has not differentiated between a specific trust and one general in its nature to secure sundry deposits.

This court does not have jurisdiction, and the motion to dismiss will be granted.