## Wilczinski's Estate

180

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

186

*Henry Arronson*, for exceptant.

*Thomas J. Minnick, Jr.*, for accountant.

BOLGER, J., December 27, 1940.—The exceptions filed by the accountant are completely lacking in merit, save that dealing with the disallowance of claim for counsel fee. The adjudication fully explains the mismanagement of the minor's funds, without notice to him or his parents, and justly, for the reasons stated therein, requires restitution by the accountant.

Counsel for the accountant claims $50 for services in stating and filing the account and appearing at the audit. Such services are essential and in no wise dependent upon the action of the court respecting the items of charge and of discharge in the account; it is a service rendered to the minor in this instance and is assessable as an expense. Therefore, with the approval of the auditing judge, exception no. 13, complaining of the disallowance of the attorney's fee, is sustained. All other exceptions of the receiver are dismissed.

The substitute guardian excepts to the failure of the auditing judge to order the accountant, as receiver of the Commercial National Bank, to pay the amount of the surcharge. The argument is advanced that the proceeds of the sale of bonds in 1939, as well as the income received theretofore on the bonds, are impressed with a trust in favor of the estate and now justify an order of this court directing the receiver to pay the money to the substitute trustee.

In effect we are asked to hold that the auditing judge erred in not awarding execution. Applications in the orphans' court for execution are not addressed to an auditing judge, but are governed by Rule 19 (*B*) which prescribes the practice to be by petition addressed to the court in banc. The application was ill-timed and therefore was properly dismissed.

Aside from the procedural aspect of the application, we are referred to Fenelli's Estate, 330 Pa. 499. Our reading of Fenelli's Estate, which involved the tracing of funds to a receiver, is exactly contrary to the contention advanced by exceptant. On page 501 the court said:

"When the case was here before, we said: 'If the final ruling on this issue [giving rise to the beneficiaries' option to accept or reject the mortgage investments] be in favor of the petitioner, it will then be incumbent upon it, in appropriate proceedings, to produce testimony sufficient to identify the trust res as a part of the present assets of the insolvent trustee.' The 'appropriate proceedings' mean proceedings in the jurisdiction having charge of distribution of the assets of the national bank: see *National Banking Act*, 12 USCA sections 191 et seq.; *Earle v. Pennsylvania*, 178 U. S. 449; *Hoffman v. Rauch*, 300 U. S. 255."

The limitations of a State or other court respecting its judgments or decrees involving distribution of assets against receivers of National banks, as successors to such banks serving as fiduciaries, are clearly defined in Earle v. Pennsylvania, 178 U. S. 449, and Earle v. Conway, 178 U. S. 456. In those cases it was held that any court of competent jurisdiction, meaning a State court as well as a Federal court, has jurisdiction to declare the rights of parties as against a National bank or the receiver thereof, but cannot effectuate such rights by lien upon specific assets of the bank in the hands of the receiver, nor disturb his custody of those assets by way of execution or other means. It is the duty of such court to determine the rights of the parties to the litigation so that the Comp-

troller of the Currency may be guided thereby in the distribution of the assets of the bank. An illustration of the handling of such matters is contained in Citizens Trust Company of Clarion, Pa., v. Trunk et al., 30 D. & C. 511.

None of the hereinbefore-cited cases involves the question of the jurisdiction of State courts, especially orphans' courts, over the acts of National banks which have formally qualified as fiduciaries with such courts and in pursuance thereof have been awarded and have accepted assets in such fiduciary capacity. All of them are concerned with debtor and creditor relationship. It might, therefore, appear that such cases are not controlling.

Under the decision of Turner's Estate, 277 Pa. 110, this court was ordered to accept as fiduciaries National banks which qualify under the laws of the United States and of the Commonwealth of Pennsylvania and who, in addition thereto, further place themselves upon equal basis with local trust companies by filing with this court their agreement to be bound by Rule 21 (A) 16 of the court. This rule requires securities and other property received by fiduciaries in a fiduciary capacity to remain in "the jurisdiction of the court and shall be kept separate and apart from the money, securities, and property of said company, so that the same can at all times be easily identified as belonging to the estate or person or persons for whose account the same has been received; and that trust funds received by the said company as fiduciary or from the person or persons for whom it is surety shall be deposited in a separate account or accounts in a bank or banks or trust company or trust companies, other than the petitioner . . ." Our accountant undertook this responsibility.

We had in In re National Bank of Germantown, etc., 30 Dist. R. 603, refused to accept National banks as fiduciaries. Judge Henderson in that opinion stated prophetically (p. 606):

"Another, and the most serious, question of conflict arises in the case of insolvency or suspension of a national bank. Section 5234 of the Revised Statutes provides:

" 'That on becoming satisfied that a national bank has refused to pay its circulating notes and is in default, the Comptroller of the Currency may forthwith appoint a receiver.

" 'Such receiver, under the direction of the Comptroller, shall take possession of the books, records and assets of every description of such association, collect all debts, dues and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct.'

"Section 1 of the Act of June 30, 1876, ch. 156, 19 Stat. at L. 63, also provides: 'That whenever any national banking association shall be dissolved, or whenever any creditor of such an association shall have obtained a judgment against it, which has remained unpaid for thirty days, and the Comptroller is satisfied of the insolvency of the association, he may, after due examination into its affairs, appoint a receiver, who shall proceed to close up such association.'

"It may not be gainsaid that such receiver would be under the control of the Federal authorities rather than our courts, and the administration of trust assets would pass under Federal control, and meanwhile our courts would be powerless. The regular administration of estates held in trust by the bank might be seriously interfered with, and they might be subjected to delay and expense attendant upon such receivership proceedings and administration, here and in Washington, if the Comptroller so decides.

"Counsel for the Southwark Bank suggests that there will be harmony between the State and Federal authorities in receivership proceedings, and legislation from time to time will cure differences. Harmony there would be, but at the expense and annoyance of those interested in trust estates. If legislation is to cure differences, let us first have the cure, and not suffer ourselves, *inter alia*,

to have the strange principle forced upon us by the Federal Reserve Act compelling us to permit the use of trust funds for the private profit of trustees."

The present position of the unfortunate minor in this case illustrates the wisdom of the objections by our predecessors as expressed in this opinion. However, the Supreme Court (Turner's Estate, supra), held that, should any inconsistency arise, the Federal jurisdiction must prevail over that of the State, even though the result may be to place upon Federal banks benefit or burden not received or assumed by the State banks or trust companies. It might well have added: "whether an additional burden be inflicted upon those who would become beneficiaries of estates in insolvent National banks."

Assets of trust estates placed in the hands of National banks as fiduciaries qualified by this court do not become assets of the bank itself. Certainly they do not become so but remain segregated under Rule 21 cited above. Therefore, as long as a National bank is solvent, it and its officers are amenable to the jurisdiction of this court regarding the assets of estates received by it pursuant to such qualification and award by the court. However, when insolvency intervenes and it appears, as in the present case, that assets of the estate have been misapplied by the receiver and are presently, as a result thereof, part of the general funds of the insolvent bank, which ultimately must be distributed, the State jurisdiction must give way to that of the Federal jurisdiction. The case is then controlled by the general laws of liquidation and of distribution of the assets of National banks as defined in the case of Earle v. Conway, supra. Therefore, the rights acquired by the substituted guardian can only be made effective upon application to the Comptroller of the Currency to whom Congress has entrusted the power to distribute the assets among those entitled thereto.

Therefore, the finding is made that the proceeds of the sale of the bonds are subject to the same property right of the minor as existed in the bonds before their sale. The substituted guardian may, therefore, in addition to the

194

remedy provided in the adjudication, apply to the receiver or to the Comptroller of the Currency for the payment of the amount of the said proceeds. With the consent of the auditing judge, the adjudication is accordingly modified to this extent.

It has been suggested that the receiver's unauthorized disposition of the trust assets makes him personally responsible to the beneficiary for his action. This may well be, but we do not regard it necessary to pass upon that question now or to express an opinion concerning it. In view of the usual practice of the Comptroller of the Currency of complying with judgments duly obtained in courts of record, this question in all probability will never ripen for decision.

Exception no. 13 is sustained. All other exceptions are dismissed and the adjudication thus modified is confirmed absolutely.