## CONNOLLY v. FIRST NAT. BANK-DETROIT.

### No. 6923.

Circuit Court of Appeals, Sixth Circuit.

Nov. 11, 1936.

Wm. Henry Gallagher, of Detroit, Mich. (A. W. Sempliner and S. Reymont Paul, both of Detroit, Mich., on the brief), for appellant.

Robert S. Marx, of Cincinnati, Ohio (Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, and Butzel, Eaman, Long, Gust & Bills, of Detroit, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

This suit was commenced on September 7, 1933, in the circuit court for Wayne county, Mich., by appellant, William F. Connolly, a resident and citizen of Michigan and receiver by appointment of a state court of Detroit Bankers Company, a Michigan corporation, against First National Bank-Detroit, a national banking association, and C. O. Thomas, its receiver, appointed by the Comptroller of the Currency, to recover $7,000,000, which, appellant alleged, the Bankers Company had advanced to the First National Company of Detroit in payment of the bank's indebtedness thereto.

On September 13, the suit was discontinued as to Thomas, receiver, and on September 19, because the return upon the summons failed to show service on the bank, a new summons was issued against it alone and was executed by delivery to Locke and Daker, former officers of the bank, but then in the employ of its receiver. On September 18, Thomas, re-

ceiver, filed a petition in the state court seeking the removal of the cause to the United States District Court, upon the ground that it was one to wind up the affairs of a national bank. Title 28, § 41, subd. 16, U.S.C. (28 U.S.C.A. § 41 (16). The petition alleged that the bank was a nominal party only and that there was diversity of citizenship between petitioner, Thomas, receiver, a resident and citizen of Pennsylvania, and Receiver Connolly. The petition was denied on September 20.

On September 28, appellant filed his declaration framed in two counts. In the first it was alleged that from April 16 to November 21, 1929, the bank had employed the First National Company to acquire certain stockholdings in various state banks; that the First National Company, pursuant to its employment, purchased shares in ten different banks (listing the banks, the number of shares acquired, and the amounts); that the defendant bank became indebted to the First National Company for these purchases in the aggregate sum of $7,245,906.80; that the Bankers Company, at the request and for the use of the bank, had on two different occasions advanced moneys to the First National Company to reimburse it for liabilities incurred in the purchase of the stocks, to wit, $4,000,000, on February 19, 1930, and $3,000,000 on March 1, 1930; that no part of said advances had been paid, whereupon appellant claimed judgment therefor. The second count declared upon the common counts and was accompanied by a bill of particulars.

On October 4, the bank entered its appearance in writing and therein objected to the jurisdiction of the state court over the subject matter of the suit on the ground that the action was one properly removable to the United States District Court. It also objected to the jurisdiction of the state court over the bank itself for the reason that at the time the suit was instituted Thomas was its receiver and Locke and Daker had lost all authority to represent it. This "appearance" set forth that it was not intended to be an answer to the declaration, but that it was filed to protect the bank and its receiver from default and to preserve the rights of all parties, pending their determination by the United States District Court.

On October 16 the bank filed *its* petition for removal. It alleged that it became insolvent on May 11, 1933, and the subsequent appointment of Thomas as receiver; that the original cause had been discontinued as to Thomas for the purpose of preventing its removal; that upon the determination that the bank was insolvent its officers and agents ceased to have any authority or control over it; and that the interests of the bank and of the receiver thereupon became identical and the controversy was therefore one arising under the laws of the United States, being a suit to wind up the affairs of a national bank.

On October 18, the state court denied this second petition for removal and on October 20 the bank, still protesting and objecting to the jurisdiction of the state court, filed an answer for the purpose of protecting itself from default and preserving its rights. This answer neither admitted nor denied the averments of the declaration that the Detroit Bankers Company had advanced $7,000,000 to the First National Company but denied that such advancements had been made at its request. It denied all allegations of the second count of the declaration and in addition set up four special defenses which we think it unnecessary to detail.

On October 28, 1933, Thomas, receiver, filed in the United States District Court a transcript of the record, as provided by title 28, c. 3, § 72, U.S.C. (28 U.S.C.A. § 72), and gave notice thereof to appellant.

On May 16, 1934, the bank filed in the District Court, conjointly, a motion to dismiss and an answer. In the answer it averred that it was being liquidated by Receiver Thomas. It denied that it had retained the First National Company as its agent to acquire certain stockholdings, alleging that it was absolutely prohibited by law from making such acquisitions. It denied the specific purchases and outlays charged in the declaration. It neither admitted nor denied that the Bankers Company had advanced $7,000,000 to the First National Company or that it had not been repaid any portion thereof. It then entered its motion to dismiss upon the ground that the bank was unauthorized to incur any obligation for such purchases or advancements.

Appellant, Connolly, receiver, then entered a special appearance for the sole purpose of moving the court to remand the cause to the state court upon the ground that the District Court was without ju-

risdiction over the subject matter and parties. The specific grounds for the motion were, that the suit was not against an officer of the United States nor did it arise under the laws of the United States; that there was no diversity of citizenship; that appellee had waived the right to remove by filing an answer in the state court; and that Thomas, its receiver, was not a party to the suit when he applied for removal.

On June 4, 1934, appellee was present in court by counsel. Appellant did not appear, and the District Court denied the motion to remand and dismissed the first count of the declaration for insufficiency and the second for want of prosecution. Later appellant moved to set aside the order of dismissal upon the ground that its counsel had had no notice that the motion to dismiss would be presented on June 4. The motion was denied. The appeal was from the order dismissing the declaration.

■ A review of that order necessarily involves the question whether the District Court had jurisdiction to entertain the case. In our view we need not consider or determine the regularity of the removal procedure because the District Court did not acquire jurisdiction thereby unless the suit could have been originally brought therein. Title 28, § 71, U.S.C. (28 U.S.C.A. § 71).

Appellee insists that jurisdiction was conferred upon the District Court by the following portion of title 28, § 41, subd. (16), U.S.C. (28 U.S.C.A. § 41(16), to wit: "Of all cases commenced by the United States, or by direction of any officer thereof, against any national banking association, *and cases for winding up the affairs of any such bank.*" (Italics ours.)

It further insists that it was only a nominal party; that the suit arose under the laws of the United States because it was commenced not only against the bank but against Receiver Thomas, who was closing up the bank as an insolvent association by authority of title 12, § 191, U.S.C. (12 U.S.C.A. § 191).

■ In cases of this nature where jurisdiction depends upon the suit's arising under the laws of the United States, i. e., under title 28, § 41, subd. (16), U.S.C. (28 U.S.C.A. § 41(16), above quoted, or under title 12, § 191, U.S.C. (12 U.S.C.A. § 191), or under any other "laws of the United States," title 28, § 41, subd. (1),

U.S.C. (28 U.S.C.A. § 41(1), we are unauthorized to go beyond the declaration in determining whether it exists.

In Bankers' Mut. Casualty Company v. Minn., St. Paul, etc., Ry. Co., 192 U.S. 371, 381, 24 S.Ct. 325, 328, 48 L.Ed. 484, it was said: "But it is contended that jurisdiction also rested on the ground that the case arose under the Constitution or laws of the United States, and that must be tested by the settled rule that a suit does not so arise unless it really and substantially involves a dispute or controversy as to the effect or construction of the Constitution or some law or treaty of the United States, upon the determination of which the result depends, and which appears on the record by plaintiff's own statement of his case in legal and logical form, such as is required in good pleading. Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Arbuckle v. Blackburn, 191 U.S. 405, 24 S.Ct. 148 [48 L.Ed. 239]; Defiance Water Company v. Defiance, 191 U.S. 184, 24 S.Ct. 63 [48 L.Ed. 140]; Little York Gold Washing &c. Company v. Keyes, 96 U.S. 199, 24 L.Ed. 656; Starin v. New York, 115 U.S. 248, 6 S.Ct. 28, 29 L.Ed. 388." See, also, Metcalf v. Watertown, 128 U.S. 586, 589, 9 S.Ct. 173, 32 L.Ed. 543; State of Ohio ex rel. v. Swift & Co., 270 F. 141, 148, note 1 (C.C.A. 6); Wichita Nat. Bank v. Smith, 72 F. 568, 570 (C.C. A. 8).

We are not dealing with a case where jurisdiction depends upon other characteristics such as the amount in controversy or diversity of citizenship. The insistence therefore that we should consider the "appearance" and answers filed in both the state and federal courts, together with the removal petitions, is without merit.

■ It is too clear for doubt that the averments of the declaration bear no analogy to a case for "winding up the affairs of the bank." The only demand is for a money judgment. Appellant does not even go so far as to invoke the aid of the court to collect by execution or otherwise in the event judgment is awarded. He does not seek to control the business of the bank or the custody of its assets or to interfere with the possession of its books and records. He does not claim a preference nor seek to have any lien declared or enforced in his favor against the assets. He merely sues as a common creditor. The declaration avers that the bank "is a banking

corporation duly organized under the laws of the United States." Appellant had a legal right therefore to bring his suit as presented by his pleading in the state court against the bank as a citizen of Michigan, title 28, § 41, subd. (16), U.S.C. (28 U.S.C.A. § 41(16), and nothing appears in the declaration which would authorize its removal. See Gully v. First Nat. Bank, etc., 81 F.(2d) 502, 506 (C.C.A. 5); Moulton v. National Farmers' Bank, 27 F.(2d) 403 (D.C.), and cases therein cited.

■ However, appellee urges that the discontinuance of the case against the receiver and the subsequent failure of appellant to mention in his declaration the commonly accepted fact that the bank was insolvent and in control of a federal receiver was a fraud upon the jurisdiction of the District Court which should be disregarded, but the answer is that such allegations were not indispensable to appellant's case as framed in his declaration. A national bank does not lose its corporate existence by reason of insolvency or the appointment of a receiver. The right of common creditors to establish the validity of their claims against it by suit in the state court is in no wise affected. The receiver would no doubt be regarded as a proper party to such suit but he is not an indispensable one. Bank of Bethel v. Pahquioque Bank, 14 Wall. (81 U.S.) 383, 400, 20 L.Ed. 840; Chemical Nat. Bank v. Hartford Dep. Co., 161 U.S. 1, 4, 16 S.Ct. 439, 40 L.Ed. 595; Central National Bank v. Insurance Co., 104 U. S. 54, 76, 26 L.Ed. 693; Speckert v. German Nat. Bank, 98 F. 151, 154 (C.C.A. 6); Denton v. Baker, 79 F. 189, 194 (C.C.A. 9). The state court was competent to adjudicate appellant's claim without the presence of the receiver. In the event of a judgment against the bank (a matter not before us and which we do not consider) the Comptroller would then become interested because of his statutory duty to make a ratable dividend thereon out of the money paid over to him by the receiver. Title 12, § 194 U.S.C. (12 U.S.C.A. § 194). See Bank of Bethel v. Pahquioque Bank, supra; Earle v. Pennsylvania, 178 U.S. 449, 455, 20 S.Ct. 915, 44 L.Ed. 1146.

We find therefore no fraudulent intention to prevent removal by the discontinuance of the suit against the receiver. Appellant had a legal right to discontinue as to him (Michigan Court Rule 38, § 1) and to proceed without his presence to the extent indicated. The inference is that appellant took this course because he was content to seek such relief only as the court might appropriately grant against the bank itself.

The judgment is reversed and the case remanded to the District Court, with directions to remand it to the state court for trial.