## LUELLA HANNAN MEMORIAL HOME v. FIRST NAT. BANK OF DETROIT.
### No. 810.

District Court, E. D. Michigan, S. D.
Feb. 5, 1940.

Miller, Canfield, Paddock & Stone, of Detroit, Mich., for plaintiff.

Robert S. Marx, Lawrence I. Levi, and Thomas L. Conlan, all of Detroit, Mich., for defendant.

TUTTLE, District Judge.

In this case, the plaintiff brought suit at law in the Circuit Court of Wayne County, Michigan, for damages for breach of lease. Although the assets of the defendant bank were in the hands of a receiver appointed by the Comptroller of the Currency pursuant to provisions for winding up national banks under the National Banking Act, 12 U.S.C.A. § 21 et seq., the receiver was not joined as a party defendant. The declaration alleges that the defendant bank or its predecessors executed as lessee a twenty-five-year lease in 1920. It further alleges that the defendant bank so conducted its affairs as to become insolvent and to bring about successively in 1933 a federal conservatorship and receivership of its affairs and to disable itself from performing its obligations to the plaintiff under the said lease. According to further allegations, the defendant defaulted in payment of rental due under the lease for the first time on March 1, 1933; the conservator was appointed on March 14, 1933, and the receiver on May 11, 1933, the Comptroller of the Currency having declared the bank insolvent; and upon May 12, 1933,

the day after his appointment, the receiver notified the plaintiff of his rejection of the lease. The declaration claims actual damages suffered until the date of its filing and anticipatory damages for the remainder of the term of the lease.

The lease upon which the suit was brought provides that if default is made by the lessee upon its covenants and such default continued for thirty days after notice thereof in writing to the lessee, or if effective proceedings in bankruptcy or receivership be instituted for the business and property of the lessee, the lessor shall have the option to terminate the lease and repossess the premises, and the lessee covenants in case of such termination to indemnify the lessor against all loss of rent and other costs incurred by reason of such termination.

After the filing of the said declaration, the defendant bank, through its duly appointed receiver, filed its petition and bond for removal of the cause to this court. The receiver did not take any action to make himself a party to the proceeding. Upon a hearing of the petition, the Circuit Judge of the state court denied it and refused to sign an order allowing the removal, filing an opinion in which he concluded from his examination of the authorities that the cause was not removable.

The defendant, again acting through its receiver, then filed a transcript of the record in this court in accordance with 28 U.S.C.A. § 72, and gave notice thereof to plaintiff. Thereafter, the plaintiff filed a motion to remand the cause to the state court, which motion is now before this court for determination.

■ From the authorities, it seems clear that although the state court may have the power in the first instance to pass upon the question of removability of a cause to this court, the final authority to determine such question rests with the federal court, regardless of whether or not the state court has entered an order authorizing removal of the cause. Burlington C. R. & N. R. Co. v. Dunn, 1887, 122 U.S. 513, 7 S.Ct. 1262, 30 L.Ed. 1159; North Carolina Public Service Corporation v. Southern Power Co., 1922, 4 Cir., 282 F. 837, 33 A.L.R. 626, appeal dismissed, 1924, 263 U.S. 508, 44 S. Ct. 164, 68 L.Ed 413. This proposition is not disputed by plaintiff's counsel and is inferentially recognized by Circuit Judge Miller in his opinion denying the defendant's petition to remove.

I come then to the question of whether a suit commenced in a state court against a national bank for damages for breach of a lease, executed by the corporation while solvent, on which rental payments were due and unpaid at the time of appointment of a receiver by the Comptroller of the Currency to liquidate the bank's assets and which lease was subsequently rejected by the receiver is removable upon petition of the bank, without the receiver being a party to the suit. Upon this question, exhaustive briefs have been filed and oral argument had before me. Plaintiff claims that under Connolly v. First National Bank-Detroit, 1936, 86 F.2d 683, decided by our Circuit Court of Appeals, the cause must be remanded; while the defendant bank attempts to distinguish the case from the Connolly case and contends that the result here is controlled by General Electric Realty Corp. v. First National Bank-Detroit, 1938, D.C., 23 F.Supp. 664, decided by my associate, Judge Lederle.

■ The answer to this question depends upon the interpretation of the Acts of Congress conferring jurisdiction upon the federal courts. For removal jurisdiction to exist, it is necessary that the cause be one of which the district courts would have original jurisdiction, 28 U.S.C.A. § 71. The federal courts no longer have jurisdiction over suits by or against national banks merely because of the federal origin of such corporations. For purposes of jurisdiction, national banking associations are by express federal statute treated exactly like citizens of the state in which they are located. 28 U.S.C.A. § 41(16); Petri v. Commercial Nat. Bank, 1892, 142 U.S. 644, 12 S.Ct. 325, 35 L.Ed. 1144. The statutes confer jurisdiction upon the district courts in cases arising under the laws and Constitution of the United States where the jurisdictional amount is present, 28 U. S.C.A. § 41(1), and, as a specialized branch of such jurisdiction, over "all cases commenced by the United States, or * * any officer thereof, against any national banking association, and cases for winding up the affairs of any such bank", without regard to jurisdictional amount. 28 U.S.C. A. § 41(16).

The subject matter of this suit—one for breach of contract—does not, of itself, apart from the parties involved, present a federal question. It is claimed by counsel for the defendant (and the only claim for federal jurisdiction) that the case is one for winding up the affairs of a nation-

279

al bank. What is the meaning of this phrase? A brief survey of its legislative history is to be found in Lawrence National Bank v. Rice, 1936, 10 Cir., 83 F.2d 642. The act of 1791, 1 Stat. 191, creating the first bank of the United States, did not specifically empower it to sue in the federal courts, and since there was not until 1875 any general legislative grant of jurisdiction to those courts over cases arising under the laws of the United States, it was held in Bank of United States v. Deveaux, 1809, 5 Cranch 61, 3 L.Ed. 38, that the federal courts had no jurisdiction over suits by that bank. The act of 1816, 3 Stat. 266, creating the second bank of the United States, however, did authorize it to sue or be sued in the federal courts; and it was held that this legislation was warranted by the Constitution, since as national banks could acquire no right, make no contract, and bring no suit except as authorized by the statute creating them the laws of the United States were necessarily involved. Osborn v. Bank of United States, 1824, 9 Wheat. 738, 6 L.Ed. 204; cf. Pacific Railroad Removal Cases, 1885, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319. In 1864, 13 Stat. 99, the statute creating the present system of national banks was enacted, with jurisdiction in the federal courts of all suits by or against them. However, in 1882, 22 Stat. 162, Congress restricted the jurisdiction of the federal courts over controversies involving national banks to the same jurisdiction they would have over state banks of the state where they were located, except as to suits between them and the United States. In 1887, 24 Stat. 552, as part of an act modifying the jurisdiction of the federal courts in a number of particulars Congress re-enacted the substance of the provision of the act of 1882, though in somewhat different language, and enlarged the exception to the restriction on federal jurisdiction by providing: "The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank." Section 4.

It appears that this section was not incorporated in the original bill introduced in Congress but was added by Senate amendment. Congressional Record, vol. 18, pages 613 and 2543. As there was no discussion of the amendment on the floor of Congress, the Congressional Record

sheds no light on the purpose of adding "cases for winding up the affairs of any bank" to the exception. There have been no important legislative changes in regard to federal jurisdiction over suits involving national banks from 1887 until the present date.

At the time the act of 1887 was passed, there were two statutory methods for winding up the affairs of insolvent banks: (1) under a receiver appointed by the Comptroller, and (2) by voluntary dissolution. In addition, it appears that a court of equity could appoint a receiver to wind up its affairs upon a judgment creditor's bill, at least in those cases where grounds for the appointment of a receiver by the Comptroller did not exist. Irons v. Manufacturers' National Bank, 1875, C. C., Fed. Cas. No. 7,068; Wright v. Merchants' National Bank, 1876, C.C., Fed.Cas. No. 18,084; King v. Pomeroy, 1903, 8 Cir., 121 F. 287. From the cases, however, it appears that resort to this remedy was not frequent.

The phrase "cases for winding up the affairs of any such bank" would seem to refer to direct actions in the courts to liquidate a bank, and I would be inclined to think that this was what Congress had in mind in passing the act of 1887 and giving federal courts jurisdiction of such cases. However, the courts have given it a much broader interpretation and have construed it to include actions which arise in the course of the winding up of national banks, whether through a receivership or voluntary dissolution and whether the action be brought against a receiver or against a shareholder's agent superseding a receivership. International Trust Co. v. Weeks, 1906, 203 U.S. 364, 27 S.Ct. 69, 51 L.Ed. 224; Auten v. United States National Bank, 1899, 174 U.S. 125, 19 S.Ct. 628, 43 L.Ed. 920; Lawrence National Bank v. Rice, supra; Wyman v. Wallace, 1906, 201 U.S. 230, 26 S.Ct. 495, 50 L.Ed. 738. None of these opinions have clearly indicated the grounds for such unusual interpretation of the language of this statute or the exact type of cases which should be so included. It is difficult for me to see how a suit either against a national bank or its receiver can be said to be a case for winding up the bank.

However, the decisions of the courts have not gone to the other extreme to hold that every case against a national bank or its receiver after the appointment of a receiver by the Comptroller is a suit

to wind up the affairs of such bank. It is established that the appointment of a receiver does not dissolve the corporate existence of the bank, and suit for a simple money judgment can thereafter be maintained against the bank alone without joining the receiver. Bank of Bethel v. Pahquioque Bank, 1871, 14 Wall. 383, 20 L.Ed. 840; Denton v. Baker, 1897, 9 Cir., 79 F. 189. It is further established that if such an action is brought in a state court against the bank for a simple money judgment, the suit is not removable at the instance of the receiver, at least in those cases where the cause of action upon which the suit is based came into being prior to the appointment of the receiver. Connolly v. First National Bank-Detroit, supra; Neely v. Planters' National Bank, 1931, D. C., 48 F.2d 266; Moulton v. National Farmers' Bank, 1928, D.C., 27 F.2d 403; Speckert v. German National Bank, 1899, 6 Cir., 98 F. 151; Wichita National Bank v. Smith, 1896, 8 Cir., 72 F. 568, error dismissed 18 S.Ct. 946, 42 L.Ed. 1214; Cf. Barons v. First National Bank, 1928, D.C., 28 F.2d 615. Thus, in the Connolly case, supra, the latest pronouncement of our Circuit Court of Appeals on this question, where the plaintiff sued the bank in the state court for money had and received and the receiver, acting in the name of the bank, removed to this court, the appellate court held that the plaintiff's motion to remand should have been granted, saying [86 F.2d 685]: "It is too clear for doubt that the averments of the declaration bear no analogy to a case for 'winding up the affairs of the bank.' The only demand is for a money judgment. Appellant does not even go so far as to invoke the aid of the court to collect by execution or otherwise in the event judgment is awarded. He does not seek to control the business of the bank or the custody of its assets or to interfere with the possession of its books and records. He does not claim a preference nor seek to have any lien declared or enforced in his favor against the assets. He merely sues as a common creditor."

The Speckert case, supra, previously decided by the Circuit Court of Appeals of this Circuit, with Judges Taft, Lurton, and Day sitting, goes one step further, holding that even where the receiver is joined as a party defendant to the state court action for damages against the bank the cause is not removable unless he is a necessary party thereto.

■ On the other hand, where suit is brought against the receiver alone or where it is sought to establish a preference or otherwise reach receivership assets, or force action on the part of the receiver, the cause is removable. Bank of America Nat. Trust & Savings Ass'n v. United States National Bank, 1933, D.C., 3 F.Supp. 990; Larabee Flour Mills v. First National Bank, 1926, 8 Cir., 13 F.2d 330; Studebaker Corp. v. First National Bank, 1926, D.C., 10 F.2d 590; Cf. Earle v. Pennsylvania, 1900, 178 U.S. 449, 20 S.Ct. 915, 44 L. Ed. 1146.

In the present case, the suit is one for a simple money judgment against the bank alone, and no relief is sought as against the receiver nor is it attempted to affect his action in any way. However, it is contended by the receiver that the suit is based upon the rejection of the lease by him after his appointment, and that since action of the receiver is a part of plaintiff's cause of action the case is distinguishable from the Connolly and other cases denying federal jurisdiction and becomes one for winding up the bank. This appears to be the basis of Judge Lederle's decision refusing remand in the General Electric case where the facts closely paralleled those in the case at bar.

■ Plaintiff's counsel, on the other hand, contends that its cause of action accrued previous to the rejection of the lease by the receiver, and that action of the receiver is not involved in its claim; and on this ground it is sought to distinguish the case from the General Electric case, where the court found the receiver's action a material part of the plaintiff's claim. The contention is based, first, upon the fact that there was default in payment of the rent by the corporation prior to the appointment of the conservator or receiver; and, second, on the ground that the insolvency of the corporation and appointment of the receiver constituted a total breach of the lease, under the principle of Central Trust Co. of Illinois v. Chicago Auditorium Association, 1916, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811, terminating the lease at that time, subject to the right of the receiver to revive it by adopting it within a reasonable time. There seems to be some support for the first ground for plaintiff's contention in Chemical National Bank v. Hartford Deposit Co., 1895, 156 Ill. 522, 41 N.E. 225, affirmed, 1896, 161 U.S. 1, 16 S. Ct. 439, 40 L.Ed. 595. However, the

lease involved in the case at bar provided a thirty-day period of grace during which the lessee could repair the default, which period did not expire until after the appointment of the conservator, and the lessor in the case at bar is only given an option at the end of that period to terminate the lease, which option was not exercised by him. With respect to the question of whether the insolvency of the bank and the appointment of the receiver constituted an anticipatory breach of the lease, it is very doubtful whether the doctrine of anticipatory breach applies to leases (see Manhattan Properties v. Irving Trust Co., 1934, 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824; Filene's Sons Co. v. Weed, 1918, 245 U.S. 597, 38 S.Ct. 211, 62 L.Ed. 497); moreover, as with default in the covenant to pay rent, the lease here expressly provides that receivership confers an option upon the lessor to terminate it and thus excludes the implication that receivership was an automatic termination of it. Plaintiff sets forth in its declaration the appointment of the receiver and the repudiation of the lease, and these facts must therefore be considered an essential part of its cause of action.

Assuming, however, that the plaintiff's cause of action did not ripen until the rejection of the lease by the receiver, I am of the opinion that under the authorities previously referred to that fact does not make this action one for winding up the affairs of the bank. The rejection of a corporation's contract by a receiver is not an act which affords the opposite party an action against the receiver for an administration claim. The claim of the plaintiff stands on no higher footing than those where the default has occurred previous to the receiver's appointment. The suit remains a suit for a money judgment against the corporation, and no relief is asked which directly affects the receiver. The receiver is not therefore a necessary party and under the test of jurisdiction applied in the Speckert case, supra, our case is not one for winding up the affairs of a bank. Clearly, the mere fact that action taken by the receiver is involved does not make him a necessary party. For example, the plaintiff in order to prevail, must establish that the lease was executed on behalf of the bank by its duly authorized agent, but it would not be contended that the agent thereby becomes a necessary party. In all cases of suits against national banks in receivership, the nonaction of the receiver in failing to pay the plaintiff's claim is at least involved in the plaintiff's case. In the Connolly case, it does not appear from the plaintiff's declaration whether the claimed obligation of the bank accrued previous to the receiver's appointment. While I find no decision other than that of Judge Lederle involving the precise question here presented, the opinion of the Fifth Circuit in Gully v. First National Bank in Meridian, 1936, 81 F.2d 502, shows that the mere fact that affirmative action of the receiver is involved, does not, in the absence of some claim against the receivership estate, make the case one over which the federal courts have jurisdiction. There suit was brought in the state court by the state tax collector against a national bank which acquired the assets of another national bank in receivership under a contract of sale of the assets by the receiver, the suit being based upon taxes originally assessed against the old bank. The case was removed to the federal court. Upon petition to remand, the Circuit Court of Appeals held that the federal court had jurisdiction on the ground that a suit to tax a national bank involved the laws of the United States, but, in considering a second ground of jurisdiction relied upon, held that the case was not one to wind up the affairs of a national bank since the suit was against the new bank on its contract and not one to wind up the old bank, despite the fact that the receiver was a party to the contract sued upon and that his action in executing it was therefore necessarily involved. (See, also, Chemical National Bank v. Hartford Deposit Co., supra, where on facts practically identical with those in the case at bar, except that the question of removal was not involved, the Supreme Court of Illinois held that the receiver was not a necessary party.)

In rejecting the lease in the case at bar, it would seem that the receiver was acting in a dual capacity, on the one hand preventing the receivership estate from becoming directly liable on the lease by adoption thereof; and at the same time serving notice on the lessor on behalf of the corporation, as the officer designated by statute to represent it, that the corporation did not intend to further carry out its obligations under the lease, thereby enabling the lessor to re-enter the premises and relet them to mitigate the damages. This dual capacity is further illustrated by the pending lawsuit in which the receiver is not representing the receivership estate, since the es-

282

tate is not a party to the suit and has taken no action to become a party. The receiver appears in this case in his other capacity as the representative of the bank, which is a party; and as such representative designated by statute is defending the bank in the place of the officers who as a result of the receivership proceeding are incapacitated to perform any acts on behalf of the bank.

■ It is clear that the mere fact that the plaintiff may intend eventually to get payment of its claim from the receiver does not make him a necessary party or make the case one to wind up the bank—otherwise the Connolly case, where the same intention undoubtedly existed, would have been decided the other way. I conclude, therefore, that under the interpretation placed by our Circuit Court of Appeals upon the statute, the present case is not one to wind up the affairs of the bank, since the receiver is not a necessary party.

■ There is an additional reason, of a procedural nature, which would make it necessary for me to remand the case on the present record even if I felt that the receiver was a necessary party to the suit in the state court: namely, the fact that the receiver is not a party at all to the action which was removed. The rule of jurisdiction established by the Court of Appeals of this Circuit is that if the receiver is a necessary party he can remove. But the receiver appears here not in the capacity of a party but only as agent of the bank authorized by statute to represent it. It does not follow that, because the receiver is a necessary party and can remove that kind of a case, the bank which he represents can likewise remove when he is not a party. The bank and its receiver are distinct and separate parties with distinct and separate rights as to jurisdiction. If the receiver has higher rights than the bank with respect to federal jurisdiction, it would seem that the procedure he should follow is first to intervene as a party defendant in the state court action, rather than to attempt to remove in the name of a party which has no independent right to remove. Except for the case decided by Judge Lederle, I do not find any adjudicated cases (and although requested to do so counsel for defendant has cited none) in which a suit against a national bank in receivership was removed to the federal court by the bank alone. The opinion of Judge Lederle does not indicate that this question of procedure was argued before him.

■ Several additional contentions of the defendant remain to be considered. It is said that I should follow the decision of Judge Lederle until an appellate court has either reversed it or decided an identical case contrary to his holding. I dislike to disagree with an associate judge, and because of this fact and the difficulty of the question presented I have given the case most careful consideration. However, placing as I do a different interpretation upon the decisions construing the jurisdictional statutes, particularly the decisions of our Circuit Court of Appeals, I feel compelled to decide the case in accordance with my own viewpoint. See Centaur Motor Co. v. Eccleston, 1920, D.C., 264 F. 852; Mast, Foos & Co. v. Stover Manufacturing Co., 1900, 177 U.S. 485, 488, 20 S.Ct. 708, 44 L.Ed. 856.

It is further argued that as the defendant cannot appeal from an order remanding the case, while the plaintiff can appeal from a decision denying remand, I ought to hold in the defendant's favor in order that the problem can be settled by an appellate court. While I am desirous of affording the parties every opportunity to review my decisions, I do not feel that the decision of these cases should be influenced by strategical considerations. Defendant's appeal is to Congress if it feels that a defendant should have the right to review orders of remand in the Circuit Court of Appeals. Moreover, it appears that the plaintiff could not appeal directly from an order denying remand, but would have to await final judgment after a full trial of the case. It may well be, therefore, that the hardship on the plaintiff in denying remand is as great as upon defendant in ordering remand. It is possible that the defendant will be able to get the question of the propriety of removal determined by an appellate court by appealing from the decree of the state Circuit Court, if adverse to it, and claiming its refusal to grant removal as error.

The contention is further advanced that the defendant has a defense on the merits to the plaintiff's demand which would not be available except for the receivership proceeding, the argument being that a claim based upon the rejection after a receiver's appointment of a lease executed by a national bank is not a proper claim against the receivership (see First National Bank of Chicago v. First National Bank

of Wheaton, 1935, 7 Cir., 78 F.2d 502; Kennedy v. Boston Continental National Bank, 1936, 1 Cir., 84 F.2d 592, and that the suit involving such defense thus involves a winding-up problem. As heretofore noted, however, the present suit does not attempt to enforce payment out of receivership assets. Whether in the section of the National Banking Act which requires the receiver to pay claims "proved to his satisfaction or adjudicated in a court of competent jurisdiction" (12 U.S. C.A. § 194) there is to be implied the condition that such claims must be provable at the date of appointment of the receiver is a problem not now before this court, but it would seem that if such condition exists the receiver could make the defense at the time payment is sought from him and that in the event of suit to enforce such payment he could remove the cause at that time. This problem is, however, not now before this court and no opinion thereon is expressed.

In my opinion, the confusion in the present case is caused by the fact that the courts have interpreted the act creating federal jurisdiction in cases for winding up national banks more broadly than the natural and logical meaning of the language used (i.e., that it applies only to court actions brought to wind up such banks); and once you go beyond that meaning it is impossible to draw a satisfactory line short of including all cases by or against national banks in receivership or their receivers within federal jurisdiction. Certainly, the basis for holding some of such suits removable and others not does not seem very substantial, since in practically all such suits the plaintiff ultimately expects to collect from the receiver and the receiver in that sense is an interested party in all. Without a substantial ground of distinction, it becomes very difficult to determine on which side of the line a particular case falls. In the absence of a change in judicial interpretation of the act, the situation would seem to call for legislative action by Congress to place all such suits in the same category and confer jurisdiction on the federal courts either in all or none. (See in this connection the remarks of the court in the Moulton case, supra.) However, under the present statute as interpreted by decisions binding upon me, I do not think a case of the present type is a "winding-up" case, and the motion to remand the case to the state court must therefore be granted.